No. 32,553

W. S. HEFFELFINGER, C. L. CUMMINGS, O. O. OSBORN, JAMES H. ROGERS and W. L. SAYERS, as Trustees of the Estate of A. J. Rice, Deceased, *Appellees*, v. IRA SCOTT and VICKERS PETROLEUM COMPANY OF DELAWARE, *Appellants*.

(47 P. 2d 66)

Opinion filed July 6, 1935.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey, W. F. Lilleston, George C. Spradling* and *Henry V. Gott,* all of Wichita, for the appellants.

*O. O. Osborn,* of Stockton, and *W. L. Sayers,* of Hill City, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for a declaratory judgment to construe a will. Judgment was for plaintiffs. Defendants appeal.

Testator owned a great deal of real estate. By the provisions of his will he created four trusts. He devised all of his property to trustees and directed that they establish and maintain a fund to be known as the A. J. Rice memorial fund to establish professorships and procure the teaching of psychological therapeutics, physiology and hygiene, and the prevention and cure of certain diseases, in the high schools at Hill City and Effingham, Kan., and in the university of Kansas and Salina Wesleyan university. They are charitable trusts.

The effective part of the will is contained in the second codicil. We are concerned with paragraphs 3, 5 and 7 of that codicil.

Paragraph 3, as far as it concerns us, is as follows:

"I do further give, devise and bequeath unto the said James H. Rogers, Earl Farrish, C. L. Cummings and W. S. Heffelfinger and W. L. Sayers, all the rest and residue of my estate both real and personal, remaining after paying the preceding bequests in this will made, in trust however, for the following uses and purposes, to wit: . . ."

Paragraph 5 reads as follows:

"The said trustees and their successors in trust shall invest and reinvest the remainder of my estate after the same has been converted into cash, in such high-class securities as will produce the largest income without impairment of such fund. . . ."

Paragraph 7 reads as follows:

". . . and I hereby authorize the aforesaid trustees or their successors to convey any real estate belonging to my said estate or trust without the order of the court and at such time or times as in their judgment it is to the best interest of said trusts that the same be sold and conveyed, all matters pertaining to the price and terms of payment to be left in the discretion of my said trustees."

By paragraph 10 of the second codicil the will named the same men as executors who were named trustees. This paragraph reads as follows:

"I hereby appoint James A. Rogers, Earl Farrish and C. L. Cummings and W. S. Heffelfinger and W. L. Sayers executors of this my last will and testament and authorize them to lease or sell and convey by deed any and all real estate belonging to my said estate without first procuring an order of the probate court directing the same, when in the judgment of said executors it is deemed to be to the best interest of my said estate, and until said real estate be sold that said executors manage my said real estate and turn over the income thereof to my said trustees, but if at the expiration of two years from the date of the probating of this will any of said real estate shall remain unsold, my said executors shall thereupon convey by deed all of my said real estate remaining unsold to the aforesaid trustees, in trust for the purposes and to carry out the trusts aforesaid, and I hereby authorize the aforesaid trustees or their successors to convey any real estate belonging to my said estate or trust without the order of the court and at such time or times as in their judgment it is to the best interest of said trusts that the same be sold and conveyed, all matters pertaining to the price and terms of payment to be left in the discretion of my said trustees."

The executors made final settlement and were discharged.

On December 29, 1934, the trustees executed oil-and-gas leases on a large tract of real estate to defendant Scott. These leases are for primary terms of ten years from their dates and as long thereafter as oil and gas, or either of them, are produced from the leased premises. Under their terms the landowner would receive one eighth royalty for oil and gas produced. A yearly rental of fifty cents an acre is to be paid for the privilege of deferring the commencement of drilling operations. The practice in the oil business is for some party to acquire leases on a large number of tracts of land, all adjacent. This is called a block. The leases involved in this case

are all part of a block. All of these leases are to be delivered to Scott if he or his assigns commence operations for the drilling of a test well at some point on the block of which they are a part on or before the first of July, 1935. If this well is not started 'these leases are to be returned to the lessors.

The Vickers Petroleum Company is a defendant in this case. It has purchased these leases from Scott and has agreed to commence a test well on or before July 1, 1935, provided the title to the leases in question are merchantable. The purpose of this action is to secure an adjudication of the authority of the trustees to execute the leases in question. If they had this authority then the leases are good and it is the duty of the Vickers Petroleum Company to proceed to drill.

The petition set out the facts about as they have been given here and in addition alleged that the trustees are authorized to manage the real estate in question or to sell or dispose of it and that this authority was included in the general authority and purpose of the will.

The Petroleum company and Ira Scott are the defendants in this action. They filed an answer in which they admit the allegations of the petition. The prayer of the answer is for a declaration of the rights of the parties. The trial court entered judgment that the plaintiffs had authority to lease the land in question for oil-and-gas development and that the leases were valid. This appeal is from that judgment.

The defendants point out that the will provided that after the estate had been converted into cash it was to be invested in securities. No specific provision was made for management and leasing. The will further provides that after two years the executors shall convey to the trustees the real estate remaining unsold to carry out the purpose of the trust. The only authority conferred upon the trustees is to convey the real estate without the order of the court where in their judgment it is to the best interests of said trusts that the same be sold and conveyed. Defendants argue from these facts that any power of the trustees to execute oil-and-gas leases must be implied.

Plaintiffs take the position that the title vested in the trustees is full and complete with no restrictions whatever except that the proceeds of any conveyance shall be used for the purposes of the trust.

This is a case where this court will be guided in a measure by what is common knowledge with reference to the oil-and-gas industry and farming conditions in this section.

Testator died in 1926. His will provided that after two years any of his real estate that remained unsold should be conveyed by his executors to the trustees under his will.

The sale of the large amount of farm lands that is involved here could not be carried out at a moment's notice. The character of the lands and of the farming industry is such that it must be sold piece by piece. It is doubtful whether more than a quarter section or half section may profitably be sold at any one time. For most of the time since the death of testator the market for real estate, especially in the part of Kansas where the bulk of this land lies, has been depressed. To have thrown this large amount of land on the market at one time would have resulted in its selling for ruinous prices. Such conduct would have been derelict on the part of the trustees. Where does this lead us?

If the trustees hold the land until a more favorable time for sale comes, they must do something with it. To let the land lie idle is out of the question. Taxes must be paid. Buildings and fences must be kept in repair. Means must be found to do these things.

Obviously in this case the trustees cannot farm the land themselves. Widely scattered as it is, this is out of the question. The manner in which such a situation is met by other landowners similarly situated is to lease the land to somebody who will farm it. Clearly the trustees have this power under the terms of the will. The rule is laid down in 65 C. J. 791 as follows:

"Trustees possess general power to lease trust property on such terms, conditions, and rentals as are reasonable and customary for that class of property in the particular vicinity, . . ."

This reasoning is helpful to us in consideration of the power of the trustees to lease for oil and gas. The authority to make a farming lease is implied in the general authority conferred on the trustees by the will because it is the only way in which the trustees are able to carry on.

It is an equally well-settled rule that a trustee must do everything in his power to preserve the property and to prevent waste. (65 C. J. 694.)

The section of the state where the land in question is located is

undergoing considerable oil activity. While it is what is known in the vernacular as wildcat territory, this court cannot close its eyes to the probability that well-developed fields nearby may extend into this vicinity. The drilling of an oil well in the general neighborhood is certain. If we should hold that the trustees cannot lease, then if a well should be brought in near these lands the valuable oil will be drained from beneath the surface and the trust would suffer. Certainly if the trustees cannot lease they cannot drill. If they cannot lease now they cannot lease if their land should turn out to be in the midst of such a field as that located in Texas where the royalty from oil wells located on school land is great enough to support the state university of Texas. Thus, while lawyers and courts are holding against the power to lease by a strict construction, the value of the property which the testator left will slip away.

Something like this was in the minds of this court in the case of *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126. In that case the guardian of minor children had executed an oil-and-gas lease on property owned by the minors. Consent of the probate court to this lease had been secured. This court reviewed the statutes of the state which give the probate court jurisdiction to authorize an outright sale of minors' lands and held the lease valid. The court said:

"This court takes judicial cognizance of well-known facts respecting the oil-and-gas industry in this state (*Kemp v. Gas Co.,* 103 Kan. 595, 598, 175 Pac. 988), and it is perfectly obvious that when adjacent lands were being prospected and developed for the production of oil and gas the minors' lands would be subjected to waste by subsurface drainage of their valuable but fugacious minerals if appropriate steps were not speedily taken to bring about offset development. And thus the sale of such an interest in the minors' lands as would conserve their estates against waste was lawful and proper and commendable. And the sale of a right to explore and develop the property for oil and gas—in other words, the leasing of the property for oil and gas—was sanctioned by statute and by order of the probate court as a proper method of conserving the minors' estate against waste." (p. 103.)

While that case is one of a guardian and his ward there is no more reason why a trustee should not be empowered to execute an oil-and-gas lease than that a guardian of a minor should not be.

We are aware of the fact that there are authorities which hold that a devise of land to a trustee with general power to manage, rent, lease and control does not confer power on the trustee to execute an oil-and-gas lease.

A case that is called to our attention is *Ohio Oil Co. v. Daughetee,* 240 Ill. 361. In that case, however, as in others that have been examined, there was a remainderman to whom the fee title in the land would go upon the happening of some contingency. The court held that to permit the trustee who held the title for a term merely to execute an oil-and-gas lease and thus take part of the value of the land away would constitute waste against the remainderman. We do not have any such a case as that here. The rental received from the oil-and-gas lease will be used to pay taxes and upkeep and there is no remainderman who may suffer. Whatever of value that flows to the trustees should oil or gas be discovered in paying quantities will be used for carrying out the purposes of the trust. As has been seen, the waste would occur if the lease was not signed.

The case of *Zinc Co. v. Freeman,* 68 Kan. 691, 75 Pac. 995, is one where this court held that an executor and trustee did not have authority to execute an oil-and-gas lease under a will that directed him to take charge of the land in question and lease and maintain the same in repair and good condition with a view to obtaining the best income from the land without permitting the same to deteriorate in value or quality. In that case there were some legatees whom the court held would suffer if the lease were held valid. This reasoning is followed in 4 Bogert's Trusts and Trustees, section 793. There it is said:

"Where a trust for charitable purposes is to continue for a definite period or for a life or lives, the leasing of the trust property is subject to the same considerations and rules that would be applicable if the trust were private. Where the trust is to be perpetual, however, the probable duration of the trust and the conflicting interests of life beneficiaries and remaindermen are no longer restrictions on the trustee's power to lease. Nevertheless, whether the power to lease be expressed or implied, the lease must be reasonable and for the benefit of the charity."

There is a further distinction. These cases turn upon the holding that the oil and gas is a part of the real estate and that a lease conferring on the lessee the right to take oil and gas from beneath the surface is in reality a sale of an incorporeal hereditament. See *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463. The will in this case confers on the trustees the fee-simple title with full power to sell and convey. Since the execution of an oil-and-gas lease is a conveyance of a right to enter the real estate and take out the oil and gas found, this will, strictly construed, confers on the trustees

the authority to execute such a lease. The authority to convey the fee by a warranty deed carries with it the authority to convey an incorporeal hereditament.

In 49 C. J. 1272 the rule is laid down as follows:

"A power to sell ordinarily does not authorize a lease, although the donee of a power to sell and dispose of property has been held to have power to lease it where circumstances justified such action, in pursuance of the purpose for which the power was created."

The exception in the above rule is sustained by *Hedges v. Riker*, 5 Johns. Ch. Rep. (N. Y.), 163. The chancellor held:

"A devise to executors in trust for C for life, and if she died without issue, then in remainder over, with power to the executors 'to sell and dispose of so much of the real estate as should be necessary to fulfill the will,' is sufficient to authorize the executors (the persons in remainder being infants) to execute leases for years, of the real estate, for such terms and upon such conditions as were reasonable and necessary to carry into effect the intentions of the testator, expressed in the will."

The rule is laid down in 4 Bogert's Trusts and Trustees, § 793, as follows:

"A power to lease will be implied where it is the intention of the donor that the property produce an income for the use of the charity."

The case of *The City of Richmond v. Davis*, 103 Ind. 449, is one where the will devised land to one for life with remainder in trust for the education of the children of Richmond. The trustees leased the land to the city for the purpose of erecting public buildings thereon. The leases were attacked on the theory that the trustees had no authority to execute them. The court said:

"It appears from these authorities that the law is, that trustees possess general power to lease trust property, and as they do possess this power, their leases, if executed according to law, are valid unless they exceed the quantity of the estate vested in the trustees, or the leases are unreasonable. The leases described in the complaint do not exceed the quantity of the estate vested in the trustees. The trustees succeed in a perpetual line, and their duties are to make the trust estate yield the greatest revenue, and there is nothing in the complaint showing that they have not adopted a course that will produce this result."

No matter what designation is used to describe an oil-and-gas lease the power to execute it is incidental to the holder of the fee-simple title.

In 4 Bogert's Trusts and Trustees, this question is discussed. At section 784 it is said:

"The existence and extent of such an implied power is to be ascertained from the trust instrument and from all of the circumstances, including the nature and condition of the trust property, existing when it was made."

From what has been said heretofore in this opinion with reference to this estate, the condition of the farming industry and the condition of the oil-and-gas industry leads to the conclusion that the trustees in this case had authority to execute the leases in question.

The judgment of the trial court is affirmed.