No. 37,517

In re Estate of Ella M. Chevalier, Deceased (HELENE STIRLING, *Appellant,* v. T. O. CANATSEY, Administrator, and ONA and T. O. CANATSEY, Appellees).

(204 P. 2d 748)

Opinion filed April 9, 1949.

*Frank W. Taylor,* of Iola, argued the cause, and *John C. Noonan,* of Philadelphia, Pa., was with him on the briefs for the appellant.

*G. E. Pees,* of Iola, argued the cause, and was on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This case involves the construction of a will which, omitting the introductory paragraph and attestation clause, reads:

"ITEM ONE. It is my will that all my last debts be paid, including funeral and burial expenses.

"ITEM Two. Any money left at Penn Mutual Insurance Company to father and mother.

"ITEM THREE. Personal property left at various places around Iola, Kansas to Mr. and Mrs. T. O. Canatsey, to be used or sold as they see fit.

"ITEM FOUR. Bonds and cash at 9th National Bank in Philadelphia, Pennsylvania, (if any at my death) along with jewelry, sterling silver and all other personal property in Philadelphia, Pennsylvania, to Mrs. Helene Stirling (Mrs. Heber Stirling.)

"ITEM FIVE. I hereby designate and appoint Mrs. Helene Stirling (Mrs. Heber Stirling) Executrix of this my last will and testament, and it is my last will that she act as such executrix without bond.

"IN TESTIMONY WHEREOF, I have hereunto subscribed my name at Iola, Kansas.

"Ella M. Chevalier."

The beneficiaries of the will are not related to the testatrix. The Canatseys, the prevailing parties, live in Iola, Allen county, where the action was tried. Helene Stirling resides in Philadelphia, Pa. The testatrix appointed Helene to serve as executrix, without bond. The childhood home of the testatrix was also in Philadelphia. The stepmother of the testatrix was the aunt of the beneficiary, Helene Stirling. The stepmother had taken care of Helene, her three brothers and of the testatrix as one family for approximately a year. The testatrix married in 1907 and she and her husband moved to New York state. They lived in various eastern places for three or four years and then moved to Iola where they resided until the death of the testatrix' husband in 1936. They had no living children.

After her husband's death the testatrix sold the home in Iola and all the furniture and household equipment except a few household items which she left with some of her Iola friends, including the Canatseys. The property left with friends probably had some sentimental value. The inventory reflects the appraised value of the items left with friends around Iola did not exceed $20. It appears the items left at the Canatseys were given to them by the testatrix but Mrs. Canatsey did not use them. She advised the testatrix she might get them if she desired to do so at any future date.

Having broken up her home in Iola the testatrix left for Philadelphia and stayed in the home of the beneficiary, Helene Stirling. The testatrix had a checking account in the Ninth National Bank of Philadelphia and also a lockbox. She made Helene a co-owner of the box but Helene never exercised the privilege of co-ownership. Helene knew the testatrix probably had $700 or $800 in the bank. She also knew the testatrix had some bonds in the safety deposit box but she did not know whether she had other bonds than

United States government bonds. Helene did not know how much the testatrix had in bonds or the denominations thereof. The testatrix kept the silverware in her trunk. In the event of her death she desired to have Helene take full charge of affairs and send her body to Iola for burial.

In 1938 the testatrix returned to Iola to make settlement for the sale of her home. While there she executed the instant will on May 25, 1938. During that visit to Iola she stayed with the Canatseys and other friends. Before she returned to Philadelphia in 1938 she shipped her silverware back to Philadelphia. Mrs. Canatsey testified that insofar as she knew it was still there. Helene could not testify positively concerning the amount of cash the testatrix had in the bank in 1944 but she thought there might have been $700 or $800. The testatrix visited in Iola during a part of some of the summers between 1938 and 1944. She stopped rental on the lockbox when she went to Iola in 1944. She did not take all her clothing with her but did take her jewelry, sterling silver, bonds and cash. She left a deposit of $5 in her checking account so that it would not be necessary to reopen that account on her return. The evidence is in conflict as to whether she intended to return to Philadelphia after 1944. The administrator testified all of the property inventoried was found in Iola at the time of her death. The property inventoried as goods and chattels consisted of jewelry, silverware, household furnishings and personal effects of the value of $456.50; two United States government coupon bonds, principal and interest, $2,055; cash in an Iola bank in the sum of $846.73 and proceeds from insurance policies which the administrator had collected in the sum of $3,286.33.

Item 2 of the will bequeathed the proceeds of the insurance policies to "father and mother." The trial court found "mother" meant stepmother. The stepmother had died later than the testatrix of the instant will. Helene Stirling is the administratrix of the estate of the testatrix' stepmother. The district court ordered the proceeds of the insurance policy delivered to that administratrix and item 2 of the instant will is not in dispute.

The question in dispute is, who is entitled to the remainder of the property in decedent's estate under items 3 and 4 of the will?

The trial court concluded that since none of the estate was in Philadelphia at decedent's death all of the estate passed to the Canatseys of Iola under item 3 of the will. Helene Stirling appeals

from that judgment and from the order overruling her motion for a new trial.

It would appear the scrivener of this will was probably not a lawyer. Be that as it may, we are required to determine the intent of the testatrix. How did she intend to dispose of her property?

It is often said a will speaks as of, or takes effect only upon, the death of the testator. Properly applied that is a correct statement of the law. However, for the purpose of determining the testatrix' intent the will must be considered as of the time it was made and with reference to the circumstances existing at that time. (57 Am. Jur., Wills, § 1209.) In *Dyal v. Brunt*, 155 Kan. 141, 123 P. 2d 307, we stated the established rule as follows:

"In contruing a will the court must put itself as nearly as possible in the situation of the testator when he made the will and from a consideration of that situation, and from the language used in every part of the will, determine as best it can the purposes of the testator and the intentions he endeavored to convey by the language used." (Syl. ¶ 2.)

Let us examine item 3, the first item in dispute. Had the testatrix *left* the inventoried articles (jewelry, diamond rings, gold-filled bracelet, wristwatch and the gentleman's gold watch) at various places around Iola at the time she executed her will in May, 1938? There is no evidence she had done so. In fact, there is substantial evidence she wore her jewelry in Iola, and when she was in Philadelphia, after executing the will. There was also testimony by Mrs. Canatsey that the silverware and crystal were shipped to Philadelphia in 1938 and no evidence she left it at various places around Iola at the time she executed the will.

Had she left some property at various places around Iola to which item 3 of the will could apply? Yes, she had. As previously stated, after disposing of most of her household furnishings the testatrix left some rather inconsequential household articles and furniture with some of her friends. They may have had sentimental value but they were inconsequential as to money value. It seems those were the only articles around Iola she could then have had in mind. It will be observed item 3 speaks in the past tense. It says, "Personal property *left*," (our emphasis) not personal property *to be left* at various places around Iola or to be deposited in Iola banks at some future time. Furthermore, with reference to articles she had actually left at various places around Iola at the time she executed the will she directed that those articles could be *used or sold* by the

beneficiaries, the Canatseys. That she did not intend to include in item 3 various other personal property than that left around Iola at the time of executing the will appears to be strengthened by other provisions of the will.

Let us examine item 4 and ascertain, if we may, whether she intended to bequeath ". . . jewelry, sterling silver and *all other personal property*" to the Canatseys. (Our emphasis.) We find that item bequeathed none of that property to the Canatseys but expressly bequeathed it all to Helene Stirling. To be sure that item refers to the articles just mentioned as being located in Philadelphia. It appears that is where they were when the will was executed. But irrespective of whether they were located in Philadelphia or elsewhere, the testatrix did not bequeath them to the Canatseys.

Let us now consider the provision pertaining to bonds and cash mentioned in item 4. The amount of cash is not stated. Neither the number, amount nor denominations of the bonds is contained in the will and those facts are now unknown. She executed the will in Iola and probably did not have the description of the bonds with her but she knew there were bonds and cash at the designated bank in Philadelphia. She therefore designated the bonds and cash by means of their location at the time. The location happened to be the designated bank. Did she, by the phrase, "if any at my death," following the statement relative to the location of the bonds and cash, mean that she did not want Helene Stirling to receive bonds and cash unless they were located in the Philadelphia bank at the time of her death? Or did she intend to bequeath bonds and cash then located in Philadelphia if any bonds or cash remained at her death? We think she intended the latter. At the time she executed the will she probably knew she would later need to use some or all of the bonds and cash then located in the Philadelphia bank. We think the logical and more reasonable interpretation of that portion of the will is that she intended Helene Stirling should have any bonds or cash that remained at her death. This intention is further fortified by the fact she indicated in item 4 that she wanted Helene Stirling to have bonds and cash in the bank ". . . *along with* jewelry, sterling silver *and all other personal property* in Philadelphia." (Our italics.) Here again we think she described the property included in the last quotation *by its location* in Philadelphia. She did not say she wanted Helene Stirling to have those articles only in the event they remained in Philadelphia at the time of her death.

There is no evidence that whatever bonds or cash may have been in the Philadelphia bank at the time the will was executed were, or were not, a part of her estate at the time of her death. In the absence of a showing such bonds and cash were no part of her estate at the time of her death we would not be justified in saying that item of the will was adeemed and, therefore, Helene Stirling could not take the property therein mentioned. Ademption is the term used to describe the act by which a specific legacy has become inoperative by the withdrawal or disappearance of the subject matter from the testator's estate in his lifetime. (*In re Estate of Hill*, 162 Kan. 385, 176 P. 2d 515.)

Moreover, item 4 also contains the words, "and all other personal property." That phrase is in the nature of a residuary bequest to Helene Stirling. Irrespective, however, of that fact we are persuaded that under none of the other contentions discussed could any of the property mentioned in item 4 be said to have been intended for the Canatseys. Notwithstanding that fact the trial court concluded all the property designated in item 4 of the will passed to the Canatseys under item 3 of the will. We think that interpretation of the will is not in conformity with the intention of the testatrix.

The judgment is therefore modified with directions to enter judgment in conformity with the views herein stated.