No. 37,972

Wood River Oil & Refining Co., Inc., a Corporation, *Appellant,* v. Ed F. Madden, Milo Sidwell, C-G Drilling Co., Inc., a Kansas Corporation; C. F. Gleason, Orian Louis Atherton, Jr., and Caroline Atherton, his wife; Julia Stallings and Otto L. Stallings, her husband; Claudia I. Sanders and Earl Sanders, her husband; Mary L. Dunlap and James W. Dunlap, her husband; Nellie Capreau and Edwin Capreau, her husband; and the Unknown Heirs, Executors, Devisees, Trustees, Administrators and Assigns of Orian Louis Atherton, deceased; M. W. Patrick Barkley and Emily Barkley, his wife, *Appellees.*

(220 P. 2d 154)

Opinion filed July 8, 1950.

*Mark H. Adams* and *William I. Robinson,* both of Wichita, argued the cause, and *Charles E. Jones, J. Ashford Manka, Addison I. West,* and *O. A. Witterman,* all of Wichita, and *Robert Osborn,* of Stockton, were with them on the briefs for the appellant.

*A. W. Hershberger* and *Richard Jones,* both of Wichita, argued the cause, and *J. B. Patterson, Wm. P. Thompson,* and *H. E. Jones,* all of Wichita, and *D. A. Hindman,* of Stockton, were with them on the briefs for the appellees and cross-appellants.

*Glenn V. Banker,* of Russell, argued the cause, and was on the briefs for appellees M. W. Patrick Barkley and Emily Barkley.

The opinion of the court was delivered by

WERTZ, J.: This action was instituted by appellant Wood River Oil & Refining Co., Inc., to quiet its title to an oil and gas lease covering certain described real property in Rooks County, Kansas, and to construe a will. All appellees, defendants in the original action, filed cross petitions seeking to establish interests in the property and to quiet their titles thereto.

The following facts gave rise to this action. J. E. Atherton, also known as James E. Atherton, died testate on July 21, 1925, owning considerable real estate in Rooks county, Kansas. His will was admitted to probate in Rooks county on August 4, 1925. By his will, J. E. Atherton devised all of his property to his wife, Mary L. Atherton, for life. The testator then by identical provisions in his will provided for the disposition of seven separate pieces of real property, including that involved in this action, to four of his children and three of his grandchildren. In this action we are concerned primarily with the fourth paragraph of the will, which reads as follows:

"Fourth: I give, devise and bequeath to my son, Orian Louis Atherton of Alva, Oklahoma, to be held by him and for his use, during his natural life time, provided he pays the taxes as they become due and payable on the same, the following described land [describing it]. After the death of my son, the said Orian Louis Atherton, it is my will and I hereby direct that the last above described real estate shall descend to the children of his body and that the same be held by them and for their use for a period of twenty (20) years from the time of the death of the said Orian Louis Atherton, after which time the said children of my son, Orian Louis Atherton, shall come into full possession of the said described real estate and may hold the same or dispose thereof in any manner they wish."

The widow, Mary L. Atherton, on August 4, 1925, elected to take under decedent's will, and the estate was duly administered and closed many years ago. The will and the order admitting it to probate have never been contested in any manner. When testator died, his son Orian Louis had six children, Lillie May Atherton Barkley, Orian Louis Atherton, Jr., Julia Stallings, Claudia I. Sanders, Mary L. Dunlap, and Nellie Capreau. Lillie May Barkley died intestate August 10, 1934, leaving as her sole heir her husband, M. W. Patrick Barkley. On January 5, 1949, Orian Louis Atherton, widower, executed and delivered to plaintiff (appellant) an oil and gas lease covering the land involved in this action, which lease was duly recorded on January 26, 1949. On January 18, 1949, Orian

Louis Atherton executed and delivered to Ed. F. Madden an oil and gas lease on the same land, which was recorded the same day, as also were leases to Madden from all the living children of Orian Louis Atherton together with their spouses, and a lease executed by O. L. Atherton as trustee for his children yet unborn covering this land. Orian Louis Atherton died on May 12, 1949, leaving the five children above named surviving him. This action was filed on June 10, 1949, against Madden and co-owners of his lease, Milo Sidwell, C-G Drilling Company, Inc., and C. F. Gleason, the five children of O. L. Atherton then living and their spouses, and M. W. Patrick Barkley, husband of the deceased daughter and her sole heir. Barkley, intervenor, filed an answer and cross petition claiming title to one-sixth interest in the real estate involved by inheritance from his wife. The case was tried on September 17, 1949, and on November 26, 1949, the trial court entered its judgment holding that under the will of James E. Atherton, Orian Louis Atherton was devised a life estate with a vested remainder in his six children in being at the time of the death of James E. Atherton; quieted the title to an undivided one-sixth interest in the property in each of the five children of Orian Louis Atherton then in being, subject to the oil and gas leases executed by them in favor of Ed. F. Madden and his assigns; and quieted title to an undivided one-sixth interest in said property in M. W. Patrick Barkley free of any oil and gas lease here involved. This appeal followed.

Error is charged in failure of the court to determine that under the will of James E. Atherton, a fee tail estate in the land in question was devised to Orian Louis Atherton; that the oil and gas lease executed by Orian Louis Atherton, the tenant in tail, in favor of appellant is binding upon the issue in tail, the persons who, on the death of Orian Louis Atherton, came into possession of the real property covered by said lease; and in holding that neither the case of *Atherton v. Ritchie, et al.*, nor the case of *Lynd v. Hillman, et al.*, both tried in the district court of Rooks county, is *res judicata* of any of the material facts and issues in this case.

Defendant appellees and cross-appellants, with the exception of the Barkleys, charge that the lower court erred in holding the case of *Atherton v. Ritchie, et al.*, was not *res judicata;* in holding that the interests of the children of the body of Orian Louis Atherton by the will of James E. Atherton vested on the death of James E. Atherton in those of the aforesaid children living at that time; and in

holding that M. W. Patrick Barkley was the owner of an undivided one-sixth interest in the land in question.

Determination of this lawsuit involves the interpretation and construction of paragraph four of the J. E. Atherton will. It is elementary that the cardinal consideration in construing a will is the intention of the testator. The test of that intention is the language contained in the four corners of the instrument, and circumstances surrounding its execution if they are needed to clarify the testator's true intent and purpose. If the testator's intention can be reasonably ascertained, it will be judicially declared and executed unless contrary to law or public policy. (*In re Estate of Works,* 168 Kan. 539, 213 P. 2d 998; *In re Estate of Chevalier,* 167 Kan. 67, 204 P. 2d 748; *In re Estate of Thompson,* 161 Kan. 641, 171 P. 2d 294; *Shannep v. Strong,* 160 Kan. 206, 160 P. 2d 683.) With these principles in mind we may now turn to the instrument that is the subject matter of this suit.

Our first inquiry is as to the nature and character of the estate taken by Orian Louis Atherton. An examination of the material portion of the first part of paragraph four will be helpful. Deleting unimportant words, that part reads:

"I give, devise and bequeath to my son . . . to be held by him and for his use, during his natural life time . . ."

These are words of limitation. They clearly indicate that Orian Louis was to enjoy only the use of the property during his lifetime. The controlling portion of paragraph four, however, is the last part thereof beginning with "After the death of my son" and may be paraphrased as follows:

the said real estate shall descend to the children of his body and the same shall be held by them and for their use for a period of twenty years from the demise of Orian Louis Atherton, after which time the said children shall come into full possession of the said real estate and may hold the same or dispose thereof in any manner they wish.

It is conceded by all parties that the testator's attempt to delay his grandchildren's enjoyment of their interest for twenty years is ineffective because no defeasance on breach is provided. However, the language attempting to delay the grandchildren's full enjoyment may be considered in determining the intention of the testator. The void provision has nothing to do with the vesting of the estate; it refers only to possession. It is to be noted that testator's attempted restriction in no way limited the manner of the grand-

children's holding or the character of their estate. They were granted absolute and complete power of disposition. The language of the instrument under consideration compels us to conclude that the ultimate fee to the land in question was in the children of Orian Louis, and that the latter took only a life estate.

The appellants contend, however, that paragraph four creates an estate tail. An acceptable definition of an estate tail is to be found in *Gardner v. Anderson, Trustee,* 116 Kan. 431, Syl. ¶ 3, 227 Pac. 743:

"An estate tail or fee. tail is a freehold estate in which there is a fixed line of inheritable succession limited to the issue of the body of the grantee or devisee, and in which the regular and general succession of statutory heirs at law is cut off."

For other definitions of estates tail see *Coleman v. Shoemaker,* 147 Kan. 689, 78 P. 2d 905, and cases cited therein. Where there is an estate tail the line of succession continues from generation to generation until the line of inheritable succession is broken by conveyance or failure of issue. In this case J. E. Atherton, by placing the fee in his grandchildren, severed the line of inheritable succession at its inception. His will provided the grandchildren were to come into full possession and might dispose of the property in any manner they wished.

A devise similar to that in paragraph four was before the court in *Brann v. Hall,* 141 Kan. 749, 750, 43 P. 2d 229. In that case the devise was in the following words:

"I hereby give and devise unto my son . . . a life estate only . . . After the death of my said son . . . I give and devise unto the lawfully begotten issue of my son . . . then living, all of the said real estate to take share and share alike, and to their heirs and assigns forever."

The court's comment on the above devise was as follows:

"The testator did, in part, select a fixed line of inheritable succession limited to the issue of the body of his devisee, but by express inclusion, he then provided that the heirs and assigns of the devisee were to take, and thus the regular and general succession of the statutory heirs at law was not cut off. Under the terms of the devise, the line of inheritable succession in the selected line could not continue so long as posterity endures in the regular course of descent, for the testator has provided otherwise, and for that reason no estate tail in the first taker was created. The result is that the devisees named as taking life estates took life estates and no more, the remainders going to the issue and the heirs and assigns of such issue of the respectively named devisees of the life estates."

The language above quoted applies with equal force to the case at bar. In the Brann case, as in the instant case, the line of inheritable succession was broken by giving grandchildren complete power of disposition.

Fee tail estates were recognized in Kansas prior to 1939 when our legislature saw fit to abolish them. (G. S. 1947 Supp. 58-502.) For the purpose of clarity it may be said that in an instrument which became operative prior to the enactment of the mentioned statute, unless it clearly appears that an estate tail is intended, the construction will be otherwise.

Having concluded that the devise in question did not create an estate tail but created a life estate with remainder over to the children of the life tenant, the next inquiry is one of classifying the remainder. Again we must look to the intention of the testator. Did he intend that the remainder vest at his demise, or at the time of his son's death? Generally, where an estate vests in a class certain but subject to a preceding life tenancy, the conveyance is held to pass a present vested interest in the remaindermen unless a contrary intent clearly appears. In the recent case of *In re Estate of Works,* supra, and cases cited therein, we said:

"The law favors vested rather than contingent remainders. If there is doubt whether the testator intended a remainder should vest at his death or at the termination of a life estate the doubt will be resolved in favor of the earlier vesting." And "In order to create a contingent remainder the intention so to do must be expressed in words so plain that no room for judicial construction remains." (Syl. ¶¶ 3 and 4.)

No contrary intention appearing, it must be held that the remainder estate vested at testator's death. Appellee M. W. Patrick Barkley, therefore, takes an undivided one-sixth interest in the property as the sole heir of his deceased wife who was a daughter of Orian Louis Atherton. The interest passing to the grandchildren may be classified as a vested remainder subject to open to let in after born children of their father. (*Faris v. Nickel,* 152 Kan. 652, 107 P. 2d 721).

Appellants contend the case of *Meyer v. Meyer,* 149 Kan. 23, 86 P. 2d 493, controls the instant case. The Meyer case is not authority for the decision that a fee tail estate was created in Orian Louis Atherton. In the Meyer case, a life estate was created in Henry Meyer, and at his death the will devised the real estate in fee simple to the "heirs of his body." In the instant case, a life estate was created in Orian Louis Atherton and after his death, the

property was to descend to the children of his body. Had the testator stopped at this point, it undoubtedly would have created an estate tail. However, the fourth paragraph of the will continues with the following words: "and that the same be held by them and for their use for a period of twenty years from the time of the death of the said Orian Louis Atherton, after which time the said children of my son, Orian Louis Atherton, shall come into full possession of the said described real estate *and may hold the same or dispose thereof in any manner they wish."* (Emphasis supplied.) It would appear that this court cannot ignore or misinterpret the effect of the italicized portion of paragraph four, to wit: "and may hold the same or dispose thereof in any manner they wish." Thus it is clear that the controlling words lead this court to determine that a fee tail estate was not created in this case as it was created in the Meyer case by the words "heirs of his body."

The contention next raised is that certain proceedings had in Rooks County District Court are *res judicata* of the material facts and issues in the case at bar. Rooks County District Court case No. 7843 was a case involving Orian Louis Atherton and the living heirs of his body, tried in 1944. It arose through an application for the appointment of a trustee for the unknown and unborn contingent remaindermen, to the end that a valid oil and gas lease might be executed on the property involved in this litigation. In that case no construction of the J. E. Atherton will was sought or made. Rooks County District Court case No. 7807, while involving a provision of the J. E. Atherton will very similar to paragraph four, was not between the same parties as the case at bar, nor was the same land involved. The elements of the doctrine of *res judicata* are set out in *Atchison & Eastern Bridge Co. v. Atchison County Comm'rs,* 150 Kan. 24 (Syl. ¶ 5), 91 P. 2d 34:

"An issue is *res judicata* only when the following conditions exist: Identity in the things sued for, identity of the cause of action, identity of persons and parties to the action, and identity in the quality of the persons for or against whom the claim is made."

It can readily be seen that neither Rooks County District Court case No. 7843 nor case No. 7807 meets this test.

For the reasons given above, the decision of the lower court is affirmed.