### No. 34,757

THE CENTRAL TRUST COMPANY, JAMES RANDALL BURROW, GEORGE C. BOWMAN, EDITH PRICE UNGE and M. H. HILL, as Trustees under the Will of Joel Randall Burrow, Deceased, *Appellees,* v. JOSEPHINE BURROW HARRIS and FRED M. HARRIS, JR., Her Husband, et al., *Appellants;* JAMES RANDALL BURROW and MARY E. BURROW, His Wife, *Defendants.*

(103 P. 2d 902)

Opinion filed July 6, 1940.

*Hugh MacFarland* and *J. J. Schenck,* both of Topeka, for the appellants.

*J. L. Hunt, Lester M. Goodell, Margaret McGurnaghan, John H. Hunt* and *George M. Brewster,* all of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is an action brought by trustees under a will to secure instructions from the court. That action resulted in judgment for the defendants. Certain beneficiaries under the will, who were defendants in the action, asked that the trial court fix a fee for

their attorneys and tax it as costs against the trust estate. The court denied this motion, and those defendants appeal.

There is not much dispute about the facts. The petition of the trustees alleged that in the will of Joel Randall Burrow he named the Central Trust Company and James Randall Burrow, George C. Bowman, Edith Price Unge and M. H. Hill as trustees of a residual trust. The beneficiaries of the trust were Josephine Burrow, Frances Burrow and Frank Burrow, children of Frank Burrow, deceased, who was the son of Joel Randall Burrow, and James Randall Burrow, another son. Subsection (d) of the third section of the will was set out in the petition. That subsection provided as follows:

"(d) I direct that all of the remainder of said trust estate shall be held by said trustees upon the following trusts and that the net income therefrom be paid as follows:

. . . . . . . . . . . . . .

"I direct that one-half of the balance of said net income, decreased from time to time proportionately as the children of my deceased son Frank Burrow respectively reach the age of twenty-one years and receive principal from said trust estate, shall be paid to my grandchildren Josephine Burrow, Frances Burrow and Frank Burrow, the children of my son Frank Burrow, in equal parts, said payments during the minority of said children to be made to their duly appointed and qualified guardian.

"I further direct that as soon as any child of my deceased son Frank Burrow shall reach the age of twenty-one years, there shall be paid to such child by said trustees an amount equal to twenty-five percent of his or her share of one-half of the principal of said trust estate, plus any sums added thereto as hereinafter provided, said share to be determined by dividing said one-half of said trust fund and accumulations by the number of the children of said Frank Burrow then living plus the number of his deceased children who shall have issue then surviving; and that thereafter all income from such child's remaining share in said trust estate shall be paid to him or her personally. I further direct that so soon as any child of my said son Frank Burrow shall reach the age of twenty-five years there shall be paid to such child by said trustees an amount, which together with the payment of principal heretofore authorized to be made to him or her shall equal sixty-five percent of his or her share of one-half of the original principal of this trust, plus any sums added thereto as hereinafter provided, said share to be determined in the manner hereinbefore set out, and thereafter said child's share of the income from said trust estate shall be reduced proportionately. I further direct that as soon as any child of my said son Frank Burrow shall reach the age of thirty years, there shall be paid to such child by said trustees an amount which shall equal the remainder of his or her share of said trust estate, said share to be determined as hereinbefore set out. Upon the payment to such child or children of the sums of principal from said trust funds as in this item provided, the trusts in regard thereto shall immediately cease and determine.

. . . . . . . . . . . . . . .

"I direct that at the times payments of principal from said trust estate are made to the children of my deceased son Frank Burrow or to the issue of deceased children as herein provided, said trustees shall pay and turn over to my son James Randall Burrow, should he then be living, from the principal of said trust fund an amount equal to the amount of principal paid to said child or children or issue of deceased children of my son Frank Burrow at such time, and immediately thereupon said trusts in regard to such sum so paid over shall cease and determine.

. . . . . . . . . . . . . . . .

"It is the intent and purpose of this section (d) of this paragraph third of my will that the children and the surviving issue of deceased children of my son Frank Burrow shall receive one-half of the income (less the income provided for said Relife Burrow during her life), and one-half of the principal of said trust fund in said section (d) referred to, if they or any of them shall survive until the final distribution of the trust estate in said section (d) referred to, and that said James Randall Burrow or his wife Mary E. Burrow or the children or the surviving issue of deceased children of my son James Randall Burrow shall receive the remainder of such income and principal, all to be paid at the times and in the manner herein provided; so that there shall be an equal division thereof as between the children of my son Frank Burrow and their surviving issue (in case any of them shall survive until the final termination of said trust) on the one hand, and my son James Randall Burrow, Mary E. Burrow, his wife, and his children or the surviving issue of deceased children (in case any of them shall survive until the final termination of said trust) on the other hand; and this provision for equal distribution shall govern the construction of this section (d) and any provision of this section contained which cannot be so construed as to permit such equal division shall be held to be void and of no effect."

The petition also set out the fourth clause of the will, as follows:

"In the conduct of said trusts and of each of them, I hereby authorize and empower said trustees to exercise discretionary powers of sale, lease and exchange over the real estate, stocks, bonds, mortgages, or other securities, or other personal estate comprising or belonging to said trusts, whether original or subsequent investments, and to execute all such deeds or other instruments as may be necessary or requisite to vest the title absolutely in the purchaser or purchasers.

. . . . . . . . . . . . . . . .

"Said trustees shall have power in their discretion to make use of stocks, bonds, or other securities which may be in their hands in making payments of any amounts herein required to be paid, at the market value thereof instead of converting such securities into money.

. . . . . . . . . . . . . . . .

"Said trustees shall be accountable only for what is received by them, and shall not be held responsible for any loss or depreciation in value of stocks, bonds, securities or other property which may be due to error of judgment, but only for such loss as may be clearly occasioned by carelessness or negligence,

and no trustee shall be responsible or liable for any default, negligence or misconduct of any other trustee."

The petition then stated that a first payment had been made to Josephine Burrow, whose name is now Josephine Burrow Harris, and James Randall Burrow, in the sum of $40,747.50 on January 12, 1935, and to each of the defendants Frances Burrow and James Randall Burrow in the sum of $41,770.83 on May 1, 1936, in accordance with what the trustees thought were the provisions of the third section of the will. The petition stated that the second payment was due Josephine Burrow Harris on the 12th day of January, 1939, and that all the payments referred to were made in cash. The petition then stated that it was clear from the will that the testator desired that Josephine Burrow Harris, Frances Burrow and Frank Burrow should receive equal payments from the trust and stated that if the trustees continued to follow the method they had been following that such method would result in unequal treatment of these parties. The petition then stated that the will was ambiguous in that it did not state of what date the value of the trust should be taken in relation to the payments to each of these children and that a great deal of difference would result, as was illustrated by the difference in the payments to Josephine and Frances, and this difference was caused by the difference in value of the trust in 1935 and 1936. The petition then stated that the trustees thought that the idea of the testator could be carried out by dividing the property into four divisions and each of the three divisions to be assigned for one of the beneficiaries of the trust with a provision that when a payment was made out of one of the divisions assigned to one of the children an equal share would be paid out of the same division to James Randall Burrow. The petition then stated that the fourth division should contain all of the real estate belonging to the trust, and such of the securities belonging to the trust as be equally divided in kind among the three divisions, and that all this property should be liquidated as rapidly as possible without detriment to the trust estate and the funds received therefrom be divided among the three divisions; that in the division assigned to Frances Burrow there was cash to equalize the amount of the first payments made to Josephine Burrow Harris and to Frances Burrow; an amount equal to those first payments would be paid to James Randall Burrow so that Frances Burrow and James Randall Burrow will have received the same amounts; that the first payment made to Frank Burrow, or the division assigned to

him, could not be equally divided in cash in the amount of these equalized payments. The petition stated that the plaintiffs were somewhat in doubt as to their power under the will to divide the property in that manner and requested the instructions of the court.

The defendants, Josephine Burrow Harris and Fred Harris, her husband, and Frances Burrow, Frank Burrow and Hugh MacFarland, as guardian of the property of Frank Burrow, all answered denying the right of the trustees to divide the trust estate into four separate trusts, as proposed in the petition, and stated that such a division would result in more of a hardship on defendants than to proceed as the trustees had been proceeding. By way of a cross petition these defendants suggested a manner in which they thought the trust property could be handled so as to safeguard the trust estate. The trustees filed a reply by way of a general denial. The court heard some evidence as to the manner in which the trusteeship had been handled, and found as follows:

"The court further finds that under the last will and testament of Joel Randall Burrow, deceased, the said Joel Randall Burrow created a residual trust which consists of but one trust estate to be kept in force and finally determined under the provisions of the last will and testament of Joel Randall Burrow, deceased, and that to make a division of said trust estate, as suggested by the trustees, would be, in effect, a plan which would divide the single residual trust estate into four separate trusts which is contrary to the provisions of said last will and testament of Joel Randall Burrow, deceased, and that said residual trust should be handled as one trust.

"The court further finds that the trustees have full power to make the payments as provided for in said residual trust to the beneficiaries thereunder either in cash or in kind as may be considered for the best advantage of said estate by the trustees.

"The court further finds that the instructions as prayed for by said trustees in their petition should be denied.

"The court further finds that the instructions as prayed for by the children of Frank Burrow, deceased, in their answer and cross petition should be denied."

The judgment was that the instructions prayed for by the plaintiffs were denied and the instructions prayed for by the defendants, children of Frank Burrow, were denied. The costs were taxed against the plaintiffs as trustees. The defendants, who were children of Frank Burrow, filed a motion asking the court to fix the value of the services of their attorneys and to order that the amount so fixed be paid to the trustees of the estate out of the residual trust and that these attorneys' fees be charged by the trustees against the whole of the trust estate. The court found that it was not em-

powered by law to make an allowance for attorneys' fees in this case and denied the motion to fix the value of the services and to tax the costs against the estate. From that order the defendants appeal.

The first ground upon which the trustees argue that the court could not tax fees of the attorneys as costs in this case against the trust estate is that the attorneys for these appellants represented only a part of the beneficiaries under the trust. It will be noted that attorneys for these appellants did represent all of the beneficiaries under the trust who were not also trustees. The beneficiaries who were not represented by the attorneys for these appellants were also trustees and had a part in the instigation of the litigation. The fact that having instigated the litigation and having named themselves as defendants they did not see fit to file answers and contest the claim set out in the petition does not mean that it was any the less the duty of the other beneficiaries under the trust to answer and resist the petition.

The petition in this case made these appellants parties defendant, summons was served on them and they were brought into court to answer. It is clear from the petition that the trustees and these appellants were both in good faith presenting the matters set out in the petition and answers to the trial court. While the prayer of the petition was only for instructions, the part of the petition just before the prayer set out just what the trustees desired to be instructed to do. In every lawsuit where a court is asked to give some relief there must be two sides. In common justice to the court to which the cause is submitted each of these sides should be presented. Any other rule would throw an undue burden on the courts and would tend to lead to poorly considered judicial pronouncements.

It is not uncommon in disputes involving estates for a party to be a nominal plaintiff or defendant when his interests are really the other way, and the burden of carrying on the litigation falls on those who consider themselves interested. In such a case courts look through the form of the action to the substance and are guided by general rules of equity and common justice. In this case while the attorneys for the appellants did not represent all the beneficiaries they did represent all the beneficiaries who considered that their interests were not the same as the interests of the beneficiaries who were also trustees.

The next argument made by the trustees is that this was a petition in which the trustees were asking the court for instructions and was

not a suit to construe a will. This argument is made to meet the argument and citation of authorities by the appellants to the effect that in suits to construe and contest wills attorney fees may be allowed and taxed as costs.

In the first place it is a little difficult to see why this is not a suit to construe a will. The trust was created by a will. The instructions being carried out by the trustees are part of a will. The trustees stated in the petition that the language of the will was ambiguous. Furthermore, the petition stated that the rights of the beneficiaries, especially Frank Burrow, would suffer to a substantial degree if the trustees went ahead as they had been doing. After all these allegations the trustees asked that they be instructed to manage the trust in a manner different from the plan they had been following. In answer to this petition, these appellants, having been made parties and brought into court, pleaded that the intention of the testator would not be carried out should the trustees manage the trust as they told the court in the petition they believed would best carry out the intention of the testator. All this required an examination and consideration of the will. The trial court examined the pleadings to which the will was attached, heard evidence and made findings and rendered judgment, denying the prayer of the petition. In the journal entry the court referred to the will. The whole proceeding required a construction of the will.

Even should it be held that this was not a suit technically to construe a will, the same reasons that make it proper to tax an attorney fee as costs in such a case apply with equal force to this case.

The matter of costs is covered in part by G. S. 1935, 60-3705 and 60-3706. These sections provide, in part, as follows:

"Costs shall be allowed of course to any defendant upon a judgment in his favor in the actions mentioned in the last section.

"In other actions the court may award and tax costs, and apportion the same between the parties on the same or adverse sides, as in its discretion it may think right and equitable."

This is not an action for the recovery of money only or for the recovery of specific real or personal property. Such being the case, the trial court could award and tax costs and apportion them between the parties as in its discretion it might think right and equitable. (See G. S. 1935, 60-3706.) In the case of *Singer v. Taylor,* 91 Kan. 190, 137 Pac. 931, a petition was filed to set aside a will and to construe a provision of it. The defendant prevailed. Apparently a motion was filed in this court by the unsuccessful party to allow

her attorney fees out of the estate. This court stated that there was a substantial controversy as to the interpretation of the clauses. This court said:

"An equitable proceeding for the construction of a will is peculiarly a case that appeals to the discretion of a court, and where there is an ambiguity in the will and a real question of interpretation the court is justified in not only assessing the costs of the litigation against the estate but also in allowing reasonable attorneys' fees payable out of the estate to the defeated as well as the successful party." (p. 192.)

It will be noted that the court when it used the language quoted above was speaking of the action to construe the will, not the contest feature. In this case there was a substantial controversy as to the provisions of the will, since both sides took them seriously enough to invoke the jurisdiction of the district court.

In *Aten v. Tobias*, 114 Kan. 646, 220 Pac. 196, the action was brought to contest a will and to construe certain provisions of it. Certain children of the testator who were made defendants, but made no answer, were willing that judgment should go for plaintiffs. The action resulted in a judgment for defendants. This court said:

"There is one matter, however, that should be corrected. The four defendants, Edwin, Katie, Valentine and Emma, seem to have been quite content that plaintiffs should prevail in this lawsuit except as to the personal estate, since they made default. Indeed, in a real sense, the action so far as the real estate was concerned was designed to free all the lands of Cyrus from any and all restrictions and limited devises and to expand into allodial fee the interests of the two plaintiffs and these four defendants; and the principal losers if plaintiffs had prevailed would have been the children of these six litigants. Whether Valentine's gain as a partitioning heir of Susan would have equalled his loss as a life cotenant in all the lands of Cyrus is not clear. The trust estate is amply able to pay these costs; the executor asked for a construction of the will; and if the costs are charged to the trust estate the grandchildren's interests will not be diminished or affected thereby. The burden of this litigation should fall upon the two plaintiffs who lose the lawsuit and upon the four defendants who, by their default, were willing that plaintiffs should prevail. For convenience such costs may be paid by the executor, at his discretion, and charged to the account of the six beneficiaries of the trust estate. (*Singer v. Taylor*, 90 Kan. 285, 133 Pac. 841; 91 Kan. 190, 137 Pac. 931; *Chapman v. Kennett*, 94 Kan. 535, 146 Pac. 1153.) Otherwise, the costs should be taxed proportionally to the defeated plaintiffs and to the individual defendants who made default." (p. 659.)

In the case we are considering the trust estate is amply able to pay attorney fees. It was necessary that there be attorneys to present to the court the opposite side from that presented by the

trustees, and it is not equitable that these beneficiaries should be compelled to pay this fee out of their personal assets. It will be noted that in both the above-cited cases this court held that attorney fees should be allowed and taxed as costs against the estate for equitable reasons, not simply because they were actions to construe or to contest a will.

*Coleman v. Shoemaker,* 147 Kan. 689, 78 P. 2d 905, was a case where the daughter of a testator brought an action against the executor of her father's estate and her three children asking for a construction of her father's will. Judgment was given against her contentions. It had been necessary to appoint a guardian *ad litem* for two of the minors. The trial court allowed each of them a fee and ordered it to be paid out of the corpus of the estate. The plaintiff objected to this, and this court said:

"The trial court allowed each of the two guardians *ad litem* a fee of $250, to be paid, together with the costs in the trial court, out of the corpus of the estate. Appellant objects to this order, especially as to the fund from which it was ordered to be taken. This is purely a matter of discretion, and we think for the best interests of all concerned that it was a very wise choice." (p. 696.)

(See, also, *Weichold v. Day,* 147 Kan. 367, 76 P. 2d 784.)

We have concluded that the trial court had the authority and it was its duty to fix a reasonable fee for the attorneys of appellants and to tax it as costs in the case to be paid out of the trust estate. We shall not fix the amount of the fee because the trial court is familiar with the amount of work done by the attorneys and it is the duty of that court to fix such a fee, and we shall assume that it will fix a reasonable fee.

A statement is made in the brief of the appellants that this court should fix a fee for the attorneys for appellant for their services in this court on this appeal. No application has been made for such an allowance and the matter will not be passed on until such an application is made.

The judgment of the trial court is reversed with instructions to proceed in accordance with the views herein expressed.