No. 43,074

In re Estate of Alice B. Lester, deceased. (ROSA GADDIE, et al., *Appellees,* v. DELBERT SHIELDS, *Appellant.*)

(379 P. 2d 275)

Opinion filed March 2, 1963.

*D. Arthur Walker,* of Arkansas City, argued the cause, and *John Madden, Robert M. Walker,* and *John Madden III,* all of Wichita, were with him on the briefs for the appellant.

*J. Roderick Mayall* and *Lyndon Gamelson,* both of Wichita, argued the cause, and *Stewart S. Bloss,* of Winfield, and *Kirke W. Dale* and *Donald Hickman,* both of Arkansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This action originated as a probate proceedings to construe decedent's last will and testament. The probate court held a class gift was created by the fourth paragraph of decedent's will and that Delbert Shields' the surviving beneficiary, took all right, title, and interest in the real estate described in paragraph four. An appeal was taken therefrom to the district court by the appellees here, and that court determined that the fourth paragraph of decedent's will *did not create* a class gift in favor of the bene-

ficiaries named therein with the result that only one third of the net proceeds from the sale of the specified property passed to Delbert. This appeal by Delbert is from the trial court's findings, orders, rulings, judgments, and decisions, as well as its order overruling Delbert's motion for new trial.

Decedent, a widow, died on February 28, 1960, leaving her last will and testament executed on January 27, 1955. The will, which was admitted to probate on April 5, 1960, in pertinent part provides:

"THIRD: I hereby give and devise unto Wylie Gaddie and Rosa Gaddie, his wife, the house in which I now live and own located at 1020 Stewart Street, Winfield, Kansas, to be theirs absolutely.

"FOURTH: I hereby authorize my executor to sell the property described as the Northwest Quarter of Section 22, Township 33, Range 3 East, Cowley County, Kansas, and to give all the net proceeds of said sale to Delbert Shields, Wylie Gaddie and Erma McCartney, share and share alike.

"FIFTH: I hereby give and devise unto Bernard McCartney and Erma McCartney, his wife, the property described as the Northwest Quarter of Section 23, Township 33, Range 3 East, Cowley County, Kansas, to be theirs absolutely.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"EIGHTH: In making the above bequests, I am not unmindful of the fact that I have other relatives, including nieces and nephews, to whom I have not made bequests but due to the fact that I feel much closer to the people to whom I have given the above bequests than to these other parties, I have not seen fit to leave my property to them.

.   .   .   .   .   .   .   .   .   .   .   .   .

"TENTH: Recognizing that my estate will probably be subject to both state and federal inheritance taxes, I hereby request and authorize my executor to pay all state and federal inheritance taxes chargeable against any specific devisee herein out of the residue to my estate, irrespective of the fact that the law of the State of Kansas makes the tax above any exemption to which the donee may be entitled payable by the specific donee.

"ELEVENTH: I hereby give, devise and bequeath the remainder of my property, subject to the bequests hereinabove made and the costs of administration and the costs required to be paid by the executor for taxes on certain specific bequests and other expenses involved in the estate to St. Mary's Hospital located in Winfield, Kansas, with the provision, however, that in accepting this gift from my estate that as a condition of said gift that said money derived from said estate shall be used in the hospital located at Winfield, Kansas, either for the improvement of the hospital building or for the purchase or improvement of hospital equipment which is to be used in their hospital at Winfield, Kansas."

Wylie Gaddie and Erma McCartney (who were named in paragraph four, above quoted, along with Delbert) predeceased decedent and this fact gives rise to our first major question on appellate review—do the terms of the fourth paragraph create a class gift to the named individuals?

At the outset the parties stipulated, in substance, that all of the beneficiaries under decedent's will were strangers to her blood and Delbert, Wylie, and Erma were not blood relatives to one another. Blanche Carson, niece, and Earl Philo Kent and Marvin Kent, grandnephews, were decedent's sole and only heirs at law. On January 19, 1959, Wylie died leaving Rosa Gaddie, his widow, as his only heir. On May 21, 1959, Erma died leaving Bernard McCartney, her husband, and her three daughters, Patricia Jean Ryan, Mary Suzanne Corbett, and Sandra Lee Ann McCartney. St. Mary's Hospital, Winfield, Kansas, residuary beneficiary under the will, was no longer in operation and was wholly precluded from taking anything under the will. All proceeds received by the executor were to be used for the payment of claims, for estate, inheritance and other taxes, and for administrative fees, costs, and expenses regardless of the source of such funds.

We should here pause to explain that Delbert contends he did not agree to the last portion of the above stipulations pertaining to the manner in which proceeds received by the executor were to be used. From the record and in his brief before us he did admit the following, which was in substance dictated into the record by the executor's counsel, to the effect that all proceeds from the real and personal property in decedent's estate and that received by the executor during administration should be used to pay estate and inheritance taxes, claims, administrative fees, and expenses and "That is the income off these farms and income from any other property she has" and including also "oil found in the land." The income was to be placed in a "common pot" in order to have enough money to pay all of the expenses to close the estate and thus each devisee would contribute to the "common pot."

These undisputed and agreed stipulations were adopted by the trial court as findings. In addition, it found that decedent's heirs would take any residue as follows: Blanche Carson, an undivided one-half interest, and the two Kent grandnephews an undivided one-fourth interest each. One bequest of $500 with which we are not herein concerned passed thereunder. A class gift was not created by the fourth paragraph thereof in consideration of the entire will, the nature of the property, "the relationship between the three beneficiaries named therein", and their relationship to decedent. One third of the net proceeds from the sale of the property passed to Delbert, but there was a controversy as to the remaining two-thirds of such net proceeds.

Thereafter the heirs of Wylie and Erma, along with the heirs of decedent, announced that a settlement had been reached with respect to the disposition and distribution of property and money described in paragraphs three, four, and five of the will. Rosa Gaddie was to receive absolutely the property conveyed in the third paragraph of the will, Bernard McCartney, Erma's widower, was to receive absolutely the property set out in the fifth paragraph of the will, which would ultimately be received by Bernard's heirs (Mary Suzanne Corbett, Patricia Jean Ryan, and Sandra Lee Ann McCartney) share and share alike. Finally, the net proceeds from the two-thirds' interest in the property involved in the fourth paragraph would pass to Wylie's widow, Rosa Gaddie, to the three McCartney heirs, and to the three heirs of decedent according to the agreement of the parties relating thereto.

In its judgment the trial court set aside gifts according to the findings of fact. The real estate in paragraph four was ordered sold forthwith, subject to the deduction of all costs of sale, including abstract expenses, inheritance or other taxes, costs of administration, revenue stamps, and thereafter one third of the net proceeds therefrom were to be paid to Delbert and the remaining two-thirds of the net proceeds were to be paid to Rosa, the McCartney heirs, and the decedent's heirs according to their agreement.

Delbert's main contention in this appeal is that the fourth paragraph of decedent's will constituted a class gift so that the only result the trial court could have lawfully reached was that since the other two members of the class predeceased the decedent, Delbert was entitled to the entire net proceeds from the property involved.

We think the will is clear and no land was ever intended to pass to the beneficiaries under the fourth paragraph. Only the net proceeds from the sale of the land were ever intended by the decedent to pass to the beneficiaries. Thus we are squarely presented with the proposition of whether paragraph four considered along with all the other provisions of the will, principally paragraph three, five, and eight, establishes a class gift under our law. It cannot be disputed that a decedent who leaves a will should not be considered to have died intestate as to any of the assets of the estate if it can be avoided. (5 Hatcher's Kansas Digest, rev. ed., Wills, § 106, p. 495, 1962 Cum. Supp., § 106, p. 100; 9 West's Kansas Digest, part 2, Wills, §§ 448, 449, p. 310, 311, 1962 Cum. P.P., §§ 448, 449, pp. 72, 73.) Both parties rely on the fact that

decedent survived some of the beneficiaries from her bounty, and it should be especially noted that the residuary legatee, St. Mary's Hospital in Winfield, had been closed and was no longer functioning as a hospital, but decedent did not see fit to make any changes in her will. We can see little or no comfort to either side in this argument and we shall not indulge in a long discussion of the proposition.

Delbert contends that decedent, by her will and more particularly by paragraph eight thereof, disinherited her niece and grand-nephews. The appropriate rule to be applied to this situation is that other things being equal, there is a presumption against any intention on the part of a testator to disinherit his legal heirs *who are favored by the policy of the law and may not be disinherited by mere conjecture.* When a testator intends to disinherit those who would take under the statutes of descent he must indicate that intention clearly by plain words, express devise to others, or necessary implication. By "necessary" implication is meant one which results from so strong a probability as to the testator's meaning that an intent contrary to that imputed cannot be supposed. The presumption against disinheritance is recognized especially in the absence of unfriendly relations existing between the testator and his decedents. (57 Am. Jur., Wills, § 1160, pp. 757, 758; and see, also, 5 Hatcher's Kansas Digest, rev. ed., Wills, § 109, p. 496; 9 West's Kansas Digest, part 2, Wills, § 453, p. 311, 1962 Cum. P.P., § 452, p. 73.)

In view of the foregoing authorities, which include others cited by Delbert, we cannot agree that paragraph eight made more conclusive Delbert's contention that a class gift was intended in paragraph four. The above authorities tend to place Kansas in a group more favorable to the rule preventing intestacy than to the rule that a testator must be very precise and meticulous in the provisions of his will before his heirs will be considered to be disinherited. In construing paragraphs four and eight together it appears the only words which could possibly be interpreted to create a class gift were that decedent stated she felt "much closer" to Wylie, Erma, and Delbert. No authority has been cited to us, and we have found none, in which it is held that a class may consist of friends or neighbors. We shall not undertake to delineate all the instances where a class could be present. We are not inclined to extend the meaning of members of a class to a group which a testator may consider as friends, neighbors, or even

those to whom he may feel "much closer." We conclude no class gift was created in decedent's will and the trial court was correct in so holding.

Another question raised is in regard to the manner in which expenses of the estate are to be paid under a stipulation which was dictated into the record by the executor's counsel. The trial court could not correctly adopt the stipulations in full as its findings of fact and then ignore that portion relating to the so-called "common pot" from which all expenses of the estate are to be paid. The trial court's judgment on that feature of the case should be modified to show that the costs enumerated were to be paid *out of all proceeds of the estate coming into the hands of the executor,* and not merely out of the proceeds from the sale of the particular real property involved in paragraph four.

With the above modification, the judgment of the trial court is affirmed.