No. 44,355

Cynthia Douglas Baldwin, *Appellee* and *Cross-Appellant*, v. Neal Hambleton, Individually and as Administrator of Estate of Irma Parker, Deceased, In the Matter of the Estate of Lulu M. Hambleton, Deceased, *Appellants* and *Cross-Appellees*.

(411 P. 2d 626)

Opinion filed March 5, 1966.

*Neal Hambleton,* of Olathe, argued the cause, and *Richard G. Rossman,* of Olathe, was with him on the briefs for the appellants and cross-appellees.

*Peter A. Martin,* of Olathe, argued the cause and was on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment construing the language of a will as creating a vested remainder.

The facts pertaining to the issues before us for consideration may be summarized.

C. S. Hambleton died on February 15, 1936, leaving a will dated January 14, 1920. The will was administered but not construed. We are interested in that part of the will which reads:

"SECOND. I give, devise and bequeath to my beloved wife, Lulu Hambleton, all property, real, personal and mixed, of which I die seized or possessed, with full power and authority to have, use, mortgage, sell, convey and dispose of during her natural life or until such time as she may remarry; in the event that my said wife should remarry it is then my will that all property remaining undisposed of, belonging to my estate at the date of her remarrying, be divided, one-half to my said wife and the remaining one-half to our children. That upon the death of my said wife without remarrying it is my will that all the rest, residue and remainder of my estate not disposed of or used by my said wife be divided equally between our children share and share alike."

C. S. Hambleton was survived by his wife, Lulu and four children, Neal, Lola, Ruth and Irma. Ruth died intestate July 14, 1957, leaving as her sole heir a daughter, Cynthia Douglas Baldwin, born October 1, 1940.

Lulu, the widow, died testate on May 7, 1963, without remarrying.

At the death of C. S. Hambleton he owned 44 shares of stock in the De Soto State Bank. As executrix of his estate Lulu transferred the 44 shares of stock to H. E. Miller who transferred it back to her as an individual. No rights are claimed from or based on this transfer. During the lifetime of Lulu the stock increased to 165 shares as a result of stock dividends. On January 22, 1960, Lulu sold 33 shares of the stock. This sale is not questioned.

On June 8, 1962, Lulu made gifts of five shares of the bank stock each to Neal, Irma and Lola. Lulu held in her name at the time of her death a total of 117 shares. The 132 shares are involved in this litigation.

On May 27, 1963, Neal, executor of the will of Lulu, filed for inheritance tax purposes only an inventory and appraisal of the 15

shares, transferred by Lulu within one year of her death, and the 117 shares passing by reason of her death under the will of C. S. Hambleton. On June 12, 1963, Neal, as executor, transferred 39 shares of the stock each to himself, Irma and Lola.

Judgment of final settlement was entered June 15, 1964, in Lulu's estate from which Cynthia appealed to the district court on July 6, 1964. On the same day Cynthia filed an original action in the district court against Neal, Irma and Lola to construe the will of C. S. Hambleton and for a declaratory judgment decreeing her an interest in the bank stock.

Irma died on October 25, 1964, and Neal Hambleton, administrator of her estate, was substituted as a party in both of the above cases.

Defendants answered denying any interest of plaintiff in the stock and contending that by the will of C. S. Hambleton his widow was vested of a life estate with the power of disposition of the stock and all the accretions thereto subject only to the condition that she not remarry, and that the remainder at her death without remarrying passed to the defendant children surviving the widow, Lulu M. Hambleton, in equal shares.

Defendants also filed counterclaims in the original action filed by Cynthia for maintenance and support furnished to Cynthia and her mother.

The case was heard by the trial court on plaintiff's motion to dismiss the counterclaims for failure to state a claim upon which relief could be granted and for summary judgment in the action to construe the will.

The trial court concluded:

"1. The court finds that the will of C. S. Hambleton, deceased, is susceptible of construction by a consideration of the will from the 'four corners' thereof, and that a consideration of oral evidence to determine the intention of the testator is not only unnecessary, but would be improper.

"2. The court construes said will as follows:

"(a) It gave Lulu M. Hambleton a life estate with a limited power of disposal which did not include the power to dispose of the assets (bank stock) by gift.

"(b) It created a vested remainder in the four children of C. S. Hambleton and Lulu M. Hambleton, all of whom were living at the time of the death of C. S. Hambleton, . . ."

The court also denied the defendants' disputed counterclaims and plaintiff's claim for attorney fees.

The defendant, Neal Hambleton, on his own behalf and as ad-

ministrator of the estate of Irma Parker, deceased, has appealed from the court's ruling on the merits. The plaintiff has cross-appealed from the order denying her attorney fees.

Appellants first contend that the court erred in excluding the deposition of Irma who was deceased at the time of the trial. The alleged purpose of the deposition was to show the character of the testator, his situation at the time he made his will, the nature of his business, the extent of his property and his relations with his family.

The appellants attempted to introduce the deposition at the hearing on the motion to dismiss and for summary judgment. The trial court concluded that when the will was considered from its four corners and under the rules of this court there were no ambiguities requiring the aid of evidence as to surrounding circumstances and therefore the consideration of the deposition would be improper.

We are inclined to agree with the ruling of the trial court. The will does not appear to contain any ambiguity, either latent or patent. The intent of the testator can be determined and the will carried into effect without the aid of extrinsic evidence as will be demonstrated when we consider the meaning of the language in the will.

This court has repeatedly held that extrinsic evidence is not admissible to show the intention of the testator where there is no ambiguity in the language used, or to give the language of the will a meaning different from that which the law attributes thereto. Rules of construction are inapplicable where terms of a will are explicit. (*In re Estate of Reynolds*, 173 Kan. 102, 244 P. 2d 234; *In re Estate of Woods*, 181 Kan. 271, 311 P. 2d 359; *In re Estate of Blank*, 182 Kan. 426, 320 P. 2d 775; *Johnston v. Gibson*, 184 Kan. 109, 334 P. 2d 348; *In re Estate of Taylor*, 185 Kan. 523, 345 P. 2d 1028; *In re Estate of Jones*, 189 Kan. 34, 366 P. 2d 792; *Parsons v. Smith, Trustee*, 190 Kan. 569, 376 P. 2d 899.)

The cardinal rule for the construction of a will is to ascertain the intention and purpose of testator from the language used. (*In re Estate of Johnson*, 175 Kan. 82, 259 P. 2d 176; *In re Estate of Freshour*, 185 Kan. 434, 345 P. 2d 689.)

The appellants contend that:

"The court erred in construing the will to create a vested remainder in the four children of C. S. Hambleton and Lulu M. Hambleton living at the time of

the death of C. S. Hambleton, each receiving an undivided one-fourth thereof, so that the vested remainder interest of Ruth Hambleton Douglas passed upon her death to the plaintiff, her daughter."

The trial court considered the language of the will as a whole, which it was required to do. The testator's intent must be gathered from the language of the entire will. (*In re Estate of Dobrovolny*, 182 Kan. 138, 318 P. 2d 1053; *Commercial National Bank v. Martin*, 185 Kan. 116, 340 P. 2d 899; *In re Estate of Kelly*, 185 Kan. 752, 347 P. 2d 428; *In re Estate of Miller*, 186 Kan. 87, 348 P. 2d 1033; *In re Estate of Buckner*, 186 Kan. 176, 348 P. 2d 818; *In re Estate of Paulson*, 188 Kan. 467, 363 P. 2d 422; *Parsons v. Smith, Trustee*, supra.) The court also applied two rules which are to be considered in connection with the construction of the language used in a will. The law favors early vesting of testamentary gifts and unless a contrary intent appears, interests created by a will are to be construed as vested rather than contingent. (*Cramer v. Browne*, 159 Kan. 423, 155, P. 2d 468; *In re Estate of Hauck*, 170 Kan. 116, 223 P. 2d 707; *Commercial National Bank v. Martin*, supra; *In re Estate of Paulson*, supra; *Giese v. Smith*, 195 Kan. 607, 408 P. 2d 687.) Also, a will will be construed in favor of the heirs of the testator and an heir will not be considered as disinherited except by express words or necessary implication. In *In re Estate of Lester*, 191 Kan. 83, 379 P. 2d 275, we stated at page 87 of the opinion:

". . . When a testator intends to disinherit those who would take under the statutes of descent he must indicate that intention clearly by plain words, express devise to others, or necessary implication. By 'necessary' implication is meant one which results from so strong a probability as to the testator's meaning that an intent contrary to that imputed cannot be supposed. The presumption against disinheritance is recognized especially in the absence of unfriendly relations existing between the testator and his decedents [descendants.] (57 Am. Jur., Wills, § 1160, pp. 757, 758; and see, also, 5 Hatcher's Kansas Digest, rev. ed., Wills, § 109, p. 496; 9 West's Kansas Digest, part 2, Wills, § 453, p. 311, 1962 Cum. P. P., § 452, p. 73.)"

This rule has also been applied to grandchildren. In *Bennett v. Humphreys*, 159 Kan. 416, 155 P. 2d 431, we held:

"If there appears to be a doubt or uncertainty as to the grantor's intention in using the word 'children' there is a reasonable presumption against disinheritance of a grandchild whose parent is dead." (Syl. 7. See, also, *In re Estate of Works*, 168 Kan. 539, 213 P. 2d 998.)

We approve of the trial court's approach to the construction of the will and the conclusion reached. We are not impressed with

appellants' argument that words "our children" should be construed as a class and the members of the class not determined until the death of the testator's widow.

A remainder is vested if it is to take effect as to possession and enjoyment whenever and however the prior estate is terminated.

The appellants argue that the vesting is affected by the fact that remainder is limited to a class such as "our children."

The mere fact that a remainder is to a class does not render it contingent. A remainder limited to a class consisting of children vests in such of the children as are in being at the time the will takes effect, subject to being opened to let in afterborn children.

This court had similar language of a will under consideration in *McLean v. Stanley*, 134 Kan. 234, 5 P. 2d 839, where it was held:

"In a will containing the following provisions:

" 'Second. I give and devise unto my beloved wife, Mary Jane McLean, all my real estate of which I may die seized, wherever situated, for the term of her natural life;   .  .  .

" 'Third. It is my will that at the death of my said wife, should she survive me, my real estate shall pass to and become the property of the persons hereinafter mentioned, and in the manner and amount hereinafter provided, that is to say:

.     .      .      .      .      .      .      .      .      .      .      .      .      .

" '(e) To my beloved daughter, Alvina Stanley, the following-described real estate for the term of her natural life, and at her death to her children in fee, to wit.:'

"where the wife and daughter Alvina both survived the testator and Alvina had a daughter living at the time of the death of the testator, it is held the will created a vested remainder in the daughter of Alvina at the death of the testator to be enjoyed after the death of the two life tenants.

"Where by the provisions of a will an interest passes in fee to a certain and definite person in being or the only one of a prescribed class, as children of a certain person, the taking of the estate at the death of a life tenant generally and naturally has reference to a postponement of the enjoyment rather than a postponement of the vesting of the estate." ( Syl. 1 and 2.)

The appellants suggest that the estate is not fixed because the widow has the power of sale and also she may remarry and the children will only take one-half.

A remainder may be vested subject to partial or complete divestment or defeasance. A remainder is vested subject to complete divestment when the taker is known but the life tenant exercises the power to sell the property.

In *Tretbar v. Aged Ministers Home,* 180 Kan. 18, 299 P. 2d 58, we stated at page 21 of the opinion:

".  .  .  The fact the interest of a remainderman may be of indefinite value or may ultimately have no material value, does not prevent the creation of a vested remainder, or the fact that the testator who devises or bequeaths property to one for life, the remainder to another, gives to the life tenant a power to dispose of the property so that there is a possibility undetermined until the determination of the life estate that the property will not, in fact, be available to the remainderman, does not make the remainder contingent but leaves it vested subject to defeasance by the exercise of the power.  (*Beall v. Hardie,* 177 Kan. 353, 358, 279 P. 2d 276; *Buxton v. Noble,* 146 Kan. 671, 73 P. 2d 43.)"

The fact that should the wife remarry, one-half of the estate was to go to her and the other one-half was to go to the children, did not affect the vesting.  If the contingency happened, one-half of the property would be divested, and the possession and enjoyment of the other one-half would be accelerated.

We conclude that the language of the will created a vested estate in the children of the testator and his wife, Lulu, and that the plaintiff as the only heir of the child, Ruth, inherited her interest.

The appellants contend that the trial court erred in construing the will to give the widow a life estate with power of disposal but prohibited the disposal of the assets by gift.  The contention covers only the fifteen shares transferred to the three living children by Lulu.

This court has held on numerous occasions that a life tenant given a power of sale has a duty to act honorably and in good conscience in exercising such power.  The power to sell, being an additional provision for the adequate support of the life tenant, does not incompass a gift of the property.

In the recent case of *Stump v. Flint,* 195 Kan. 2, 402 P. 2d 794, it is stated:

"As we approach the question, we recognize the duty which rests upon a life tenant, with power of disposal, to act honorably and in good conscience in exercising that power.  In *Windscheffel v. Wright,* 187 Kan. 678, 360 P. 2d 178, 89 A. L. R. 2d 636, we held:

" 'A life tenant with power to sell real property devised to her for life with remainder to designated persons, is a trustee or *quasi* trustee and occupies a fiduciary relation to the remaindermen, and in the exercise of that power, she owes to them the highest duty to act honestly and in good faith by selling the property to a *bona fide* purchaser for the best price offered.'  (Syl. ¶ 3.)"  (p.

6. See, also, *Parsons v. Smith, Trustee*, 190 Kan. 569, 376 P. 2d 899; *Lowdermilk v. Lowdermilk*, 183 Kan. 174, 326 P. 2d 248; *Sharpe v. Sharpe*, 164 Kan. 484, 190 P. 2d 344.)

The appellants' final contention is that the trial court erred in sustaining appellee's motion to dismiss and for summary judgment upon the following counterclaims of appellants:

"(a) . . . the Joint Counterclaim in respect to advancements totalling $3,983.00 made by the testator to plaintiff's mother, Ruth Douglas, between August, 1927 and October, 1930. [Father's care of daughter.]

"(b) . . . the Joint Counterclaim for $10,368.55 for maintenance and support furnished by Lulu M. Hambleton to plaintiff and plaintiff's mother between October 1, 1940 and July 14, 1957. [Mother's care of daughter.]

"(c) . . . the Separate Counterclaim of Neal Hambleton as Administrator of the Estate of Irma H. Parker, deceased, totalling $922.80 for maintenance and support furnished plaintiff between August, 1954, through May, 1957. [Aunt's care of niece.]"

Neither the father, the mother nor the aunt made any claim for maintenance and support of Ruth or her daughter during their lifetime.

The trial court concluded that the claims were barred by the statute of limitations. The appellee suggests in addition that the maintenance and support were gratuitous and that the claims fall within the rule that one member of a family has no right of action against another for board and lodging unless there is an understanding that such a payment will be made.

Without reviewing further reasons we are forced to agree. There is no suggestion that there was any understanding that the father, mother or aunt would be paid for maintenance and support. In *In re Estate of Rogers*, 184 Kan. 24, 334 P. 2d 830, it was held:

"In order for one member of a family to recover against the estate of another member for services rendered the decedent in his lifetime, the claimant must show either that an express contract for remuneration existed or that the circumstances under which the services were rendered were such as to exhibit a reasonable and proper expectation that there would be compensation (following *In re Estate of Nicholson*, 167 Kan. 14, 204 P. 2d 602)." (Syl. 1. See, also, *Nelson v. Peterson*, 147 Kan. 507, 78 P. 2d 20; *In re Estate of Grobbe*, 167 Kan. 640, 208 P. 2d 243; *Story v. McCormick*, 70 Kan. 323, 78 Pac. 819; *Wyley v. Bull*, 41 Kan. 206, 20 Pac. 855.)

There remains for appellate review the question, raised by the cross-appeal, as to appellee's right to attorney fees. The trial court without stating the reason for its decision denied the appellee's motion.

Under the facts and circumstances of this case we have little difficulty in concluding that, under our decisions, the district court had the authority to grant the appellee's motion for attorney fees and that it should have done so.

This court has held in numerous cases that where a meritorious action is brought to construe a will, attorney fees could be allowed under the provisions of K. S. A. 59-1504. Where the action has been brought in the district court the attorney fees permitted under K. S. A. 59-1504 have been allowed as costs under the provision of G. S. 1949, 60-3706 which provides:

"In other actions the court may award and tax costs, and apportion the same between the parties on the same or adverse sides, as in its discretion it may think right and equitable."

G. S. 1949, 60-3706 was not retained in the new Code of Civil Procedure but in lieu thereof we have K. S. A. 60-2003 which provides in part:

"Items which may be included in the taxation of costs are:
. . . . . . . . . . . .
"(6) Such other charges as are by statute authorized to be taxed as costs."

In the case now before us the property had been transferred contrary to the provisions of the will. It was only through the successful efforts of the appellee that the language of the will was properly construed and the intention of the testator properly carried out. In the recent case of *Parsons v. Smith, Trustee,* 190 Kan. 569, 376 P. 2d 899, the cases covering the points under discussion are cited in a statement by this court as follows:

"Moreover, we deem it right and equitable that, after having determined what would be a reasonable fee for the movants' attorneys under the confronting facts and circumstances, it should have directed that such fees and the court costs be paid out of the corpus of the estate still in the hands of Leah Smith, trustee. [The trustee was only a stakeholder as the trust was unlawfully created.]

"See, *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907, where it is said:

"'It has been held where there is ambiguity in the provisions of a will and a real controversy as to its construction, it is competent for the court to allow reasonable attorney fees out of the estate to the defeated as well as the successful party; *and in connection with the same subject it has been held that under the provisions of what is now G. S. 1949, 60-3706, the district court in its discretion has authority to tax costs and allow attorney fees and to determine from what source they should be paid, as it may deem right and equitable.* (*In re Estate of Walton,* [183 Kan. 238, 243, 326 P. 2d 264] *supra; In re Estate of*

*Reynolds,* 176 Kan. 254, 270 P. 2d 299; *Singer v. Taylor,* 91 Kan. 190, 137 Pac. 931; and *Hurst v. Weaver,* 75 Kan. 758, 763, 90 Pac. 297.)' (p. 86.) (Emphasis supplied.)

"See, also, *Central Trust Co. v. Harris,* 152 Kan. 296, 300 to 304, incl., 103 P. 2d 902." (p. 574.)

The corpus of the estate of C. S. Hambleton, the 132 shares of bank stock, is still in the hands of the two living children and the estate of the deceased child of the testator and is available for paying costs including attorney fees.

The judgment on the merits of the case is affirmed but the judgment denying plaintiff's motion for attorney fees is reversed with instructions to make a proper allowance of fees for plaintiff's attorney to be assessed against the corpus of the property before its division into one-fourth equal shares and distributed in accordance with the order of the trial court.

APPROVED BY THE COURT.