No. 37,784

In re Estate of Robert M. Works, Deceased. (Leota M. Works, Mary Ella Works, Mitchell B. Bushey, as guardian *ad litem* for Charles Bruce Works and Paul Wilson Works, *Appellants*, v. Warren W. Works, *Appellee.*)

(213 P. 2d 998)

Opinion
filed January 28, 1950.

*Frederick G. Apt* and *Mitchell H. Bushey,* both of Iola, argued the cause, and *Howard M. Immel,* of Iola, was with them on the briefs for the appellants.

*John O. Foust,* of Iola, argued the cause, and *Kenneth H. Foust,* of Iola, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This action involves the interpretation of a will. The facts were stipulated by the parties. The testator, Robert M. Works, had five living children, three boys and two girls, to each of whom he devised real estate in separate paragraphs of his will. The title to only one tract of real estate devised to his son, Charles W. Works, is here involved. After devising specific tracts of land to his five children the testator included the following paragraph in the will:

"Seventh:—The above bequests and gifts of my real estate are made to my children heretofore named upon condition that they and each of them shall hold the same during their lifetime, and at the death of any one of them the real estate herein bequeathed and devised shall descend to their legitimate children. And in case any one or more of the children above named, should die without legitimate issue, then the share above given and devised to such childless devisee shall descend to and become the property of their brothers and sisters, children of mine who shall survive, share and share alike."

The controversy involves paragraph seven. The testator died in April, 1911. All of his children were then living. At the time of the testator's death his son, Charles, had two legitimate living children. They were Warren W. Works and Clark O. Works. The testator's son, Charles, died in October, 1946. Clark, however, had predeceased his father, Charles, in 1943. Clark's only heirs at law were Leota M. Works, his widow, two sons, Charles and Paul, and a daughter, Mary Ella. Upon the death of the testator, Charles W. Works went into possession of the land devised to him for life. In 1948 Leota M. Works, the widow of Clark Works, conveyed her interest, if any, to the land in question to her children, Charles, Paul and Mary Ella.

The controversy here is whether Warren W. Works, the one living son of Charles, received the entire remainder interest in the land or whether Warren took only one-half of the remainder and the three children of Clark took the other half.

The trial court held the entire remainder passed to Warren, on the death of his father, Charles. From that judgment the three children and the widow of Clark appeal.

The merit of the appeal depends on the proper interpretation of paragraph seven of the will and in particular on the first sentence thereof. The parties refer to various rules of judicial construction. They endeavor to apply the rules they cite in a manner designed to support the desired result. If the intention of the testator is clear there is, of course, no occasion for employing rules of judicial construction. (*In re Estate of Ellertson,* 157 Kan. 492, 142 P. 2d 724; *Shannep v. Strong,* 160 Kan. 206, 213, 160 P. 2d 683.) The rule to which all others must yield is the rule that the intention of the testator must prevail if it reasonably appears (*Selzer v. Selzer,* 146 Kan. 273, 69 P. 2d 708) unless it is contrary to settled rules of positive law or in violation of public policy. (*Calkin v. Wallace,* 160 Kan. 760, 165 P. 2d 224.)

We, therefore, first inquire what was the testator's intention? As an aid to such inquiry we apply the often repeated general guides that a will speaks from and takes effect on the testator's death and is to be construed as operating according to conditions then existing unless it plainly shows a contrary intention. (*In re Estate of Ellertson,* supra.) Also, in order to ascertain the testator's intention courts place themselves as nearly as possible in the position of the testator at the time he executed the will. (*In re Estate of Chevalier,* 167 Kan. 67, 204 P. 2d 748.)

Applying these elementary but fundamental guides for ascertaining the testator's intention we find that at the time of executing the will in 1906 the testator had five children. He devised separate tracts of land to each of them for life and provided that on the death of any of them the land devised to such person should "descend to their legitimate children." At the testator's death in 1911 his son, Charles, had two living children, Warren and Clark. Charles had no other children thereafter.

It is conceded that at the testator's death a life estate vested in the land devised to Charles. The question is, did a remainder interest vest in each of the two children of Charles *at the time of the testator's death?* Appellants contend it did. Appellee claims it did not. If appellee is right Warren took the entire remainder interest in the land devised to his father, Charles, for life. If appellants are right the three of them share equally in the remainder with their Uncle Warren.

Appellee asserts a remainder interest did not vest in Clark on the testator's death but was contingent upon Clark's survival until the members of the class—children of Charles—were determined at the end of Charles's life estate. Appellants insist in order to adopt appellee's contention that a contingent remainder was created the will must be rewritten by adding at the end of the first sentence of paragraph seven a condition not contained therein, to wit: ". . . provided they survive the life tenant." They contend a contingent remainder cannot be so created but must appear from language the testator himself expressly employed or from which an intention to create a contingent remainder is clearly implied.

There long has been a prevalent disposition by all courts, and this court is committed to the rule, of favoring vested rather than contingent remainders. Consequently where there arises a grave doubt from the terms of a conveyance whether the remainder vested at the death of the testator, or should remain expectant and contingent until the happening of a future event, the doubt is resolved in favor of a vested remainder. (*Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288; *Purl v. Purl,* 108 Kan. 673, 197 Pac. 185; *Votapka v. Votapka,* 136 Kan. 224, 14 P. 2d 732; *Buxton v. Noble,* 146 Kan. 671, 73 P. 2d 43; *Cramer v. Browne,* 159 Kan. 423, 155 P. 2d 468; *Epperson v. Bennett,* 161 Kan. 298, 167 P. 2d 606, Anno. 166 A. L. R. 816.)

So in the Bunting case, *supra,* it was held:

"In a devise to a wife for life, with remainder to the legal heirs of the testator, to create a contingent remainder the intent so to do must be expressed in words so plain that there is no room for construction.

"No remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested." (Syl. ¶ 1, 2.)

And in the Purl case, *supra,* it was said:

"A will speaks from the time of the testator's death. A remainder will be regarded as vested rather than contingent, unless such an interpretation would contravene the testator's *expressed intention.*" (p. 675.) (Our italics.)

Likewise in the Votapka case, *supra,* the rule was stated thus:

"The law of this state favors the vesting of estates, and instruments transferring an interest in real estate, whether will or deed, will be construed as creating a vested estate, *unless a different intent is expressed or clearly implied from the terms of the instrument itself.*" (p. 226.) (Our italics.)

Two remaindermen, Warren and Clark, were living and definitely ascertainable on the death of the testator. No question exists concerning their identity. There can be no doubt Warren and Clark

would have received the remainder had Charles, their father, died immediately after the testator. The will contains no expressed intention that the vesting of the remainder in Warren and Clark should depend upon whether they survived their father. If doubt exists concerning his intention to create such a condition the remainder must be held to have vested at the testator's death. We need, therefore, not conclude it clearly appears a vested remainder was created although we think that was the testator's intention.

In *Buxton v. Noble,* supra, not cited by the parties, appellants, as here, contended the remainder interest did not vest until the termination of the life estate and, therefore, that the one remainderman living at that time, instead of four living at the testator's death, took the entire remainder. Applying formerly stated principles of vesting we denied the contention and held:

"A will which established a trust for the support, comfort and enjoyment of a life tenant and devised and bequeathed the remainder and the accretions thereto, if any, to four persons who were definitely ascertainable and who would take at once on the death of the life tenant, created a vested remainder.

"The fact the interest of a remainderman may be of indefinite value or may ultimately have no material value, does not prevent the creation of a vested remainder." (Syl. ¶ 1, 3.)

Where provisions in a will, other than those particularly pertinent, throw light on the testator's intention courts will consider them. (*Dyal v. Brunt,* 155 Kan. 141, 123 P. 2d 307.) The second sentence of paragraph seven likewise tends to disclose the testator's intent the children, if any, of the life tenants should receive the remainder. It was only in the event a life tenant died childless that the remainder interest in land devised to him should be distributed among the testator's own children. It will also be noted that here again, in the second sentence of paragraph seven, there is no indication a remainderman should not take in the event he predeceased the life tenant.

Under circumstances similar to those obtaining here it has been held the word "child" includes grandchildren. (*Bennett v. Humphreys,* 159 Kan. 416, 155 P. 2d 431.) Appellants are the grandchildren of Charles, the life tenant. In a carefully considered opinion by the late Mr. Justice Hoch in the Bennett case it was held:

"Although the word 'children' is not ordinarily construed to include grandchildren, it is properly construed to include grandchildren when the context, or the surrounding facts and circumstances, in case of ambiguity, make it clear that the grantor so intended.

"If there appears to be a doubt or uncertainty as to the grantor's intention

in using the word 'children' there is a reasonable presumption against disinheritance of a grandchild whose parent is dead." (Syl. ¶ 6, 7.)

The rule, in that respect, applies to wills and deeds alike. (*Bennett v. Humphreys, supra.*)

It is unnecessary to discuss the various factual situations in cases from this and other jurisdictions cited by industrious counsel for the respective parties. That there is some difficulty in harmonizing all of our own decisions touching the subject of vesting has been frankly conceded in the recent case of *Epperson v. Bennett, supra.*

The judgment is reversed with directions to the district court to enter a decree awarding Warren W. Works, appellee, a one-half interest in the remainder of the land devised to Charles W. Works for life and the other one-half interest to Charles, Paul and Mary Ella Works, appellants, share and share alike.