No. 41,997

In the Matter of the Estate of Doris I. Paulson, Deceased. (KATH-ERINE BREEN and KATHERINE BREEN, as Executrix of the Estate of Doris I. Paulson, Deceased, *Appellees,* v. W. CARL PAULSON and WILLIAM CARL PAULSON, as Executor of the Estate of William I. Paulson, Deceased, *Appellants.*)

(363 P. 2d 422)

Opinion filed July 8, 1961.

*L. J. Bond,* of El Dorado, and *William A. Smith,* of Topeka, argued the cause, and *Robert M. Bond,* of El Dorado, was with them on the briefs for the appellants.

*W. H. Coutts, III,* and *Walter J. Kennedy,* of El Dorado, argued the cause, and *W. H. Coutts, Jr.,* was with them on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: The ultimate question in this appeal is whether Doris I. Paulson, deceased, owned at the time of her death a remainder interest in some 560 acres of land in Butler county. The answer to that question depends upon the construction of the will of her grandfather Peder Paulson, who died in 1927, and whose will was made in 1914 and a codicil appended thereto in 1916. The question arose in the probate court of Butler county when William I. Paulson and W. Carl Paulson, father and brother respectively of Doris, filed separate answers to the petition for final settlement of Katherine Breen, executrix and sole legatee and devisee under the will of Doris I. Paulson, deceased. Peder Paulson divided his property among his various children after providing for his wife Martha. It

would appear that Martha was survived by her husband, and the third paragraph of the will of Peder Paulson devised the land in question in the following manner:

"Third:—I give, devise and bequeath to my son, William I. Paulson and Alpha Paulson, his wife, and to the survivor of them, during the term of their natural lives, the use, rents, issues and profits of the (description of real estate) during which period they are to pay all taxes levied on said real estate, and make all necessary repairs thereon, and shall not encumber, sell or convey their interest therein or any part thereof, and any and all mortgages, liens or conveyances that should be made by them, or either of them, shall be absolutely void and of no effect, and after the death of the said William I. Paulson and Alpha Paulson, his wife, and the survivor of them I give and devise said real estate in this paragraph described to the children born of the bodies of the said William Paulson and Alpha Paulson, or either of them, provided however, that in case any of such child or children so born should be dead at the time of the death of the survivor of the said William I. Paulson and Alpha Paulson, leaving children surviving them, then and in that event such children shall take the share that their deceased parent would have taken if such deceased parent had outlived the said William Paulson and Alpha Paulson."

William, the father, and Carl, the brother, in their separate answers to the petition for final settlement contended that Doris I. Paulson had been devised only a contingent remainder as a child of William and that since she predeceased William and died without children, she took no interest in the land in question.

At the hearing on the petition for final settlement, the probate court sustained the contentions of the answers to the petition and entered its order holding that the estate of Doris did not own any interest in the land in question despite the fact the land had been included in the inventory of the estate. Thereupon, Katherine Breen, as executrix, filed an appeal to the district court. After a proper hearing in the district court, that court entered its order together with a carefully written memorandum opinion holding that Doris I. Paulson held a vested remainder under the will of her grandfather to the land in question. Shortly after the decision in the district court, William, the father of Doris died, and Carl, the brother, who is also executor of the father's estate has appealed to this court.

Perhaps one more fact should be noted at this point before turning to the arguments of the parties to this appeal. By 1916, the production of oil and gas had begun in Butler county. Peder Paulson being fully advised in the matter on the 28th day of April, 1916, as noted above, made a codicil to his will of 1914, providing that in each of the gifts of life estates to his children, all of the life

tenants in the will should have absolute power to give mineral leases. The provisions for each life tenancy read alike. The provision relating to the land in question in this appeal read in part as follows:

". . . to my son William I. Paulson and Alpha Paulson, his wife, and to the survivor of them, I give and devise unto said William I. Paulson and Alpha Paulson, and the survivor of them, the right and privilege to make, execute and deliver to whom they may see fit and on such terms as they may determine oil, gas and mineral leases on said real estate or any part thereof as fully and binding on said real estate and the remaindermen, vested or contingent, as I could do in my lifetime or such remaindermen could when they become fully vested with said real estate upon the perfect happening of all of the contingencies provided for in said Will."

Both parties to this appeal raise certain questions about jurisdiction over the parties to the appeal. We will say only that we feel this court has and the lower courts had sufficient jurisdiction in this matter and will not extend the opinion upon that issue.

The appellant relies heavily upon the rule of construction in accord with the testator's intent and contends that the questions in the appeal should be decided by the intent of the testator. One of the first quotations made from an authority in his brief is from *Commercial National Bank v. Martin*, 185 Kan. 116, 340 P. 2d 899, as follows:

"It is the well-established rule in this jurisdiction that the intention of the testator is to be determined from the whole will—from the four corners of the instrument when all provisions of the will are considered without deleting any part thereof (citing cases)."

Appellant also cites and quotes from *In re Estate of Freshour*, 185 Kan. 434, 438, 345 P. 2d 689, to the same effect.

But in arguing the matter of the intention of the testator, the appellant is inclined to stray outside the language of the testator contained in the will. Notice that it is the intention expressed by the testator in the will which is controlling. We come then to the construction of the language of the will, and turning again to *Commercial National Bank v. Martin*, supra, at page 121 we find another well-known rule stated as follows:

"However, this court has held that no remainder will be construed to be contingent which may, consistently with the words used and the intention expressed, be deemed vested. (*Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288; *In re Estate of Woods*, supra, 280, 281.) The law favors the early vesting of testamentary gifts, and unless a contrary intention clearly appears in a testamentary instrument, an interest will be regarded as vested, rather than contingent (citing cases)."

This rule in favor of the early vesting of estates runs through the whole of Anglo-American law. The law has always favored alienaability of land.

So let us turn to the language of the will in the present case. The first clear provision of the instrument is the devise of a life estate to William I. Paulson and Alpha Paulson, his wife, and to the survivor of them. Then we find the following language: "And after the death of (both of the life tenants) I give and devise said real estate in this paragraph described to the children born of the bodies of (the life tenants) or either of them."

We would say that this provision standing alone is clear and provided for vested remainders as soon as children were born of William and Alpha or either of them. The mere fact that a class of devisees may be enlarged by later events, such as the birth of other children who likewise become members of the class, does not prevent the devise from vesting in interest. The rule says that the remainder is vested in the then members of the class subject to the possibility that it will open and take in other members of the class. One of our cases first definitely adhering to this rule is *McLean v. Stanley*, 134 Kan. 234, at 239, 5 P. 2d 839, and attention is directed to authorities cited.

But returning to the language of the will, we find the so-called proviso, which reads:

". . . provided however, that in case any of such child or children so born should be dead at the time of the death of the survivor of the said William I. Paulson and Alpha Paulson, leaving children surviving them, then and in that event such children shall take the share that their deceased parent would have taken if such deceased parent had outlived the said William I. Paulson and Alpha Paulson."

Appellant strongly urges that these last provisions make it quite plain that the testator intended the children of William and Alpha had to survive both their parents before they received a vested interest in the devise of the third paragraph of the will. But, *the testator did not say so, and he easily could have done so.*

The fact is that this kind of a provision following a gift of a remainder to children of a life tenant is not uncommon. It is true that the case of *McLean v. Stanley*, supra, did not concern such a provision, but this court in other cases has dealt with these provisions.

We believe the cases of this court and the courts of a majority of other states show that these provisos do not make the remainder

contingent, but that the remainder to the child is vested as to interest in the estate, and that if the child should die before the death of the life tenant, his title and interest may be divested if he leaves children of his own. Both these contingencies must occur. This rule is always conditioned upon the fact that the testator in no direct manner expressed the intention that only children surviving the life tenant should take an interest in the estate.

In the case of *Faris v. Nickel,* 152 Kan. 652, 107 P. 2d 721, we find a construction of the following devise in the will of one Jacob Nickel:

"SECOND: I give, devise and bequeath all of my estate, of every kind and nature whatsoever, to my wife, Katrina Nickel, to have and to hold for and during the term of her natural life, with remainder at her death to my children, in fee simple, forever, the descendents of any deceased child or children to take the parents' share."

The testator died leaving his widow and nine children. One of the nine children died later during the lifetime of the widow leaving no children but survived by his widow. In the Faris case, this court held that the remainder to the deceased child was a vested remainder and that the son's widow was entitled to his share. The opinion in this case should be read carefully as a treatise on real property by an eminent authority.

In the case of *Ghormley v. Kleeden,* 155 Kan. 319, 124 P. 2d 467, a testator died leaving land to his widow for life with remainder to his six named children, and further providing that if any of the six children should die during the widow's lifetime, the deceased child's share should go to his children and in the absence of children over to others. This court held that the title to the remainder was vested in the then living six children, subject to being divested if any of them died before the widow.

In the older case of *Hammond v. Martin,* 100 Kan. 285, 164 Pac. 171, the syllabus reads as follows:

"Where a will devises a life interest to the testator's wife, with a remainder in equal shares to their five children, a provision that, if any of the children should die before the inheritance passed to them, the issue, if any, of such deceased child should take his share, even if construed to relate to the situation arising from the death of a child after that of the testator and before that of the mother, does not prevent the spouse of a deceased child, who died after the father and before the mother, from inheriting the share of such child."

Attention is further directed to the cases of *Epperson v. Bennett,* 161 Kan. 298, 167 P. 2d 606, and *In re Estate of Works,* 168 Kan.

539, 213 P. 2d 998, which we believe to be in accord with the cases cited above. Attention should also be directed to the decisions of other courts involving similar testamentary provisions to those in the case at bar. Many of the cases from other courts are to be found in the annotations in 109 ALR 5, and 47 ALR 2d 901.

We believe the case of *Matter of Krooss*, 302 N. Y., 424, 99 N. E. 2d 222, 47 ALR 2d 894, which precedes the annotation in ALR 2d just cited, is especially worthy of note in the case at bar. In the Krooss case, testator gave to his widow a life estate with power to invade the principal; and what remained after her death, he then gave to his son and daughter, naming them. The will also contained an explicit provision that if either child died before the widow, leaving descendants, such descendants should take the deceased child's share. The daughter predeceased the widow of the testator and left no descendants.

In this case, which would seem almost exactly like the case at bar, the Court of Appeals of New York held that the daughter's husband was entitled to her share of the estate. That court said:

"The will under consideration is simple in language and simple in plan. The testator gave his widow a life estate and a power to use the principal if it proved necessary for her maintenance and support. What remained after her death he gave 'absolutely and forever' in equal shares to his two children, Florence and John. Had the will stopped at that point, there would be no question that the remainders were vested. And, since that is so, additional language will not be read as qualifying or cutting down the estate unless that language is as clear and decisive as that which created the vested remainder. See, e. g., *Goodwin v. Coddington*, 154 NY 283, 286, 48 NE 729; *Byrnes v. Stilwell*, 103 NY 453, 460, 9 NE 241. The further language used by the testator in this case demonstrates, not that he was rendering the vesting of the estates in his children conditional upon survival of the life beneficiary, but that he was willing to have those estates divested only upon the combined occurrences of two further events. He explicitly provided, if either of his children died before his wife, 'leaving descendants,' then 'such descendants shall take the share the parent would have taken if then living.' If the words used mean what they say, then, divestiture of the remainder estates depended upon the happening of two plainly expressed and stipulated conditions: (1) the child, Florence or John, must die before the life beneficiary, and (2) the child so dying must leave descendants. Only if both of those conditions came to pass was the remainder—by apt and unequivocal language already vested in Florence and John—to be divested and bestowed instead upon the descendants of him or her who might have died."

We have reviewed all the cases cited in the brief of appellant. Most of them can be readily distinguished in that they provided for

a definite survivorship until the death of the life tenant. Further, almost all of these cases are distinguished in the opinions in *McLean v. Stanley*, and *Faris v. Nickel* or the other cases cited *supra*.

The appellee calls attention to the wording of the codicil of Peder Paulson's will. It is suggested that the codicil refers to the remainders of the grandchildren as vested and to those of the great-grandchildren as being contingent. It is also suggested that the scrivener of the will was a learned lawyer. This is an interesting possibility but alone would not be entitled to a great deal of weight. Perhaps the language was indeed intentional, and if so we must assume Peder Paulson fully understood that his grand-daughter Doris had a vested remainder subject to being divested and followed by a contingent remainder to her possible children. Since she had no children surviving her, her interest in the property was never divested (*Matter of Krooss*, supra).

This court believes that the district court was correct in its decision of the case at bar, and therefore, the decision must be affirmed. It is so ordered.