No. 44,431

Eva Hitchcock, William E. Enders, et al., *Appellants*, v. Skelly Oil Co., Albert M. Austin, T. Gra Gaston, Trustee, et al., *Appellees*.

(414 P. 2d 67)

Opinion filed May 13, 1966.

*Harold H. Malone,* of Wichita, argued the cause, and *Hal B. Malone* and *Wayne D. Coulson,* both of Wichita, and *Arthur C. Hodgson,* of Lyons, were with him on the brief for the appellants.

*Granville M. Bush,* of Lyons, argued the cause and was on the brief for the appellee, T. Gra Gaston, trustee.

*George B. Collins,* of Wichita, argued the cause, and *Clifford L. Malone, Cecil E. Merkle,* and *K. W. Pringle, Jr.,* all of Wichita, *Rubert G. Martin,* of Lyons, and *William Scheurich,* of Tulsa, Oklahoma, were with him on the brief for the appellees except T. Gra Gaston, trustee, and Skelly Oil Company.

*William F. Pielsticker,* of Wichita, was on the brief for the appellee, Skelly Oil Company.

The opinion of the court was delivered by

HARMAN, C.: This is a declaratory judgment action to construe the will of Cyrus Tobias and a family settlement agreement made thereafter. This appeal constitutes the second appearance of the will in this court (see *Aten v. Tobias,* 114 Kan. 646, 220 Pac. 196, wherein the will is largely reproduced).

The parts of the will with which we are primarily concerned in this appeal are as follows:

"It is my desire and Will, in which my wife, Susan E. Tobias, has expressed and does express a cordial concurrence and approval, to preserve intact the bulk, body and substance of the real estate of which I may die seized or possessed for the grand children of either and both myself and my wife, now living or hereafter to be born, and in the interpretation and execution of the terms of this Will, the foregoing condition of the minds of myself and my wife shall be borne in mind.

. . . . . . . . . . . . . .

"3rd. I give, devise and bequeath unto my son, Edwin E. Tobias, my stepson Valentine O. Enders and my daughters Nora E. Jones, Katie V. Cherpitel, Bessie E. Aten and Amma S. Mason, share and share alike, for and during the term of their natural lives only, as hereinafter, in this Will, limited, defined and explained, all the rest, residue and remainder of the real estate of which I may die seized or possessed, wheresoever the same may be situated.

"Out of the rents and issues of said real estate, there shall be first paid, annually, by my executor, all taxes, charges and assessments thereon, and the residue of all rents, issues, profits and proceeds thereof shall be divided equally, share and share alike, between and among the six legatees above, in this paragraph, named.

"Upon the death of any, or either, of such six legatees, if he or she shall leave surviving a child or children, such child or children shall take the place and be entitled to the share of its or their parent, so long as any of the above named six legatees may live. If, upon the death of either of said six legatees, in this paragraph named, he or she shall leave no child surviving him or her, then, in such case, his or her share of the proceeds and rents of said real estate shall go to, and be divided among, the survivors of said six legatees, and the children of any deceased legatee or legatees as above provided.

"Upon and after the death of all of said six legatees above named all of the said real estate shall be and become the property, in fee simple, of the grand children of myself and wife or either of us, being children of any of the above named six legatees who may leave a child or children surviving.

"Upon the vesting of said real estate, in fee simple, in the grand children of myself and wife, or either of us all such grand children shall take and receive equally, share and share alike, *per capita* and not *per stirpes*.

"4th. It is my Will that neither said Edwin E. Tobias, Valentine O. Enders, Nora E. Jones, Katie V. Cherpitel, Bessie E. Aten or Amma S. Mason, nor any, nor all of them shall have any right, power, or authority to sell, convey, mortgage or otherwise encumber any of the real estate in this Will disposed of, devised and bequeathed, except as in the next succeeding paragraph of this Will provided. Any attempt to sell, convey, mortgage, or place a lien upon said real estate, or any part thereof, or interest therein, in contravention of the terms of this Will, shall be absolutely nugatory and void.

"5th. My executor, hereinafter named, may, by and with the sanction of the Probate Court sell, convey and make good title to any, or all of the following described real estate to wit:—[certain lands described]

.    .    .    .    .    .    .    .    .    .    .    .    .

"The proceeds of all such real estate sold shall, within a reasonable time, be by my executor, with the sanction of the Probate Court, invested in other real estate yielding reasonable income.

"The title of any and all real estate, so purchased, shall be taken in the name of my executor, as Trustee, and shall be held by him for the benefit of those entitled thereto under the provisions of this Will under the same conditions, and according to the devises and bequests, and for the benefit of the same devisees and legatees, as named for the real estate hereinbefore devised and bequeathed.

.    .    .    .    .    .    .    .    .    .    .    .    .

"9th. I hereby nominate, constitute and appoint my son, Edwin E. Tobias, to be the executor of this Will."

Cyrus' wife Susan predeceased him. Cyrus died in 1921, owning fourteen quarter sections of farm land and other property. He was survived by his five grown children and his stepson Valentine O. Enders (being all those named as primary life tenants in paragraph 3 of his will) and by fourteen grandchildren, eight of whom were natural born grandchildren of both Cyrus and Susan, and six of whom were grandchildren of Susan (being children of Valentine). It may be noted at this point that no more grandchildren have been born or adopted, and that all the fourteen grandchildren, except one, Vernon Enders, to be mentioned more in detail later, are still living and constitute thirteen of the eighteen plaintiffs in this action. The will was duly admitted to probate and the son, Edwin E. Tobias, qualified as executor. Thereafter in case No. 5184 in the district court of Rice county, Kansas, the parties thereto being all the children and grandchildren of Cyrus (including the stepson Valentine and his children), an action was filed to have, *inter alia,* the will adjudged invalid and to accelerate the remainder

interests. Plaintiffs therein appealed from an adverse decision in the district court to this court, which appeal is reported at *Aten v. Tobias,* supra, and which will be referred to later. Suffice it to say now this court upheld the will holding that it created a trust estate for the benefit of the six children, with power in the executor to sell part of the trust estate and reinvest the proceeds and hold the same as trustee, with a remainder estate in the grandchildren.

On May 25, 1929, Edwin E. Tobias, as trustee, filed a petition in the district court of Rice county, case No. 5920, the defendants therein being the life tenants named in the will and their children. Valentine O. Enders was included as a defendant; he entered his voluntary appearance in the action and consented that judgment might be taken as prayed for in plaintiffs' petition. Plaintiffs prayed for the appointment of a trustee to represent the "holders of such contingent interests and with full power and authority to represent the holders of such contingent interests, whether now in being or hereafter born, in and about the making of an oil and gas lease." Personal service was had therein upon Vernon Enders, a minor, and upon his legal guardian and thereafter a guardian *ad litem* was appointed for him as well as the other minors in the action, and answer duly filed on their behalf. Judgment was duly entered in this proceeding on August 21, 1929, all the parties thereto being present by their representative attorneys or the guardian *ad litem.* The court appointed Edwin E. Tobias as trustee for and on behalf of all of the grandchildren of Cyrus Tobias who might survive the legatees named in his will and such trustee was "granted full power and authority . . . to make and enter into an oil and gas mining lease upon and covering the lands hereinbefore described, and with full power and authority to receive and hold in trust all the proceeds of said oil and gas lease which may belong or accrue to the holders of such contingent interests, and with full power and authority to represent the holders of such contingent interests, whether such holders be now in being or hereafter born." The trustee, Edwin E. Tobias, entered into an oil and gas lease in December, 1929, but it appears this lease was later abandoned and was thereafter expressly released and we are not further concerned herein with the same.

At this point it should be noted that on October 16, 1945, the sixth child of Valentine O. Enders, namely, Vernon Enders, died intestate leaving surviving him as his heirs at law his spouse, Beatrice McCallum Enders, and one child, Karen Lou Enders, a

minor, residents of Canada, both of whom appear as plaintiffs in the instant action.

Thereafter in the same case, No. 5920, Edwin E. Tobias, still acting as trustee under the prior district court order, filed his petition for the approval of an oil and gas lease entered into by him on April 26, 1961, such lease being made to Albert M. Austin and covering one-half section of the land involved herein. Edwin, as petitioner, prayed for a court order approving his action in the execution and delivery of the lease as trustee, and ratifying and approving the lease and he further petitioned for an order determining that the lease was binding upon the ultimate remaindermen whether then born or whether thereafter to be born. All of the then living children and grandchildren of Cyrus entered their voluntary appearances in connection with said petition "as a representative of a class who will become the ultimate remaindermen in and to this property . . . under the Last Will and Testament of Cyrus Tobias, deceased." A guardian *ad litem* was appointed for Karen Lou Enders, a minor, and an answer filed by him in her behalf. Notice of the hearing on the trustee's petition was given by mailing to Karen Lou Enders and Beatrice McCallum Enders and at the hearing the court found the allegations of the petition were true; that the matter of the determination of whether or not Karen Lou Enders was a possible contingent remainderman need not be determined; that the determination of who the ultimate remaindermen were should be deferred by the court until the death of all of the life tenants and the court again found that Edwin E. Tobias had been appointed as trustee for these contingent remaindermen by the order of the court dated August 21, 1929; that the trustee had never been discharged and that the court had retained jurisdiction over this cause. The court ratified and approved the action of the trustee in executing the oil and gas lease and it further reserved general jurisdiction to make such other and further orders as may seem just and proper until the trust terminated by the death of all of the life tenants. This oil and gas lease is the presently producing one owned by certain defendants herein.

Thereafter in this same action, No. 5920, following the completion of the first of eighteen producing wells, Edwin E. Tobias, as trustee, filed a motion for instructions setting forth the facts regarding the production and praying for instructions as to the manner of distributing the royalties. Notice of the hearing therein was again

given by mail to all interested parties including Karen Lou Enders, Beatrice McCallum Enders, her mother and natural guardian, and also her guardian *ad litem*. Thereafter the court entered its order to the trustee regarding the disposition of royalties. These royalties are being held and invested by the trustee, the interest thereon being distributed to the life tenants. Edwin E. Tobias died on October 3, 1963, and an application was duly filed in case No. 5920 for the appointment of a successor trustee. The court set the matter for hearing and directed that notice be given to all interested parties and such notice was again given by mail to Karen Lou Enders and her mother who was her natural guardian. T. Gra Gaston was appointed as successor trustee. Thereafter and between that time and November 30, 1964, seventeen additional producing wells were drilled on the premises in question, plus one dry hole, which was completed as a salt water disposal well. Accumulated production from the premises was 324,195 barrels of oil through November 30, 1964, at an accumulated cost on that date of $659,662.61.

Prior to the filing of the instant action and on April 2, 1964, all of the plaintiffs herein, with the exception of Beatrice McCallum Enders and Karen Lou Enders, among themselves, entered into what is denominated an "Agreement to Provide for the Vesting and Division of Oil and Gas Royalty." This contract recited that the subject land was under an oil and gas lease as appeared of record and that the royalties payable thereunder should be divided in equal shares among the fourteen grandchildren of the testator including a one-fourteenth share to the estate of Vernon Enders, deceased, the life tenants thereby waiving their interests therein. Upon the refusal of the lessee to pay the royalties in accordance with this agreement the instant action was filed to construe the will and the family settlement agreement, and to compel payment of the oil royalty pursuant to the latter. The action was later expanded by plaintiffs to claim cancellation of the oil and gas lease as to a one-fourteenth interest therein, this being the interest claimed by plaintiffs to be created in favor of Beatrice McCallum Enders and Karen Lou Enders as a result of the family agreement. Plaintiffs are the two now surviving children of Cyrus—his daughters, Katie and Bessie—and the thirteen surviving grandchildren, together with the heirs at law of Vernon Enders, deceased, and the heirs at law of a grandchild who predeceased his grandfather Cyrus. Defendants are the successor trustee hereinbefore referred to, the oil lessee and his assigns and the purchaser of the oil produced under the lease.

The trial court made extensive findings of fact and conclusions of law. It held that under the will a life estate in the nature of a trust was devised to the testator's five children and stepson and a remainder created in those only of their children who may survive all of the life tenants; it also held that the rights of plaintiffs and their predecessors in interest had been determined adversely to plaintiff's present claims in the previous actions mentioned and that such were *res judicata*, and it also held the family settlement agreement was of no effect insofar as acceleration of the vesting of a remainder interest or payment of royalty was concerned, and it denied cancellation of any interest in the lease, ruling generally against the claims of the plaintiffs, referred to hereinafter as the appellants.

Appellants first urge as error here the failure of the trial court to construe the remainder interests created under the will as being vested remainders in the grandchildren of Cyrus and Susan Tobias, surviving at Cyrus' death, subject to be divested to let in any after-born grandchildren, their entry into possession being postponed until after the death of all of the life tenants. They point to the preamble to the will wherein the testator speaks of preserving intact the real estate for the benefit of the grandchildren now living and hereafter to be born, and they argue that since the will did not provide what should happen to the share of a grandchild in the event he died prior to the last of the life tenants, the testator must have intended it to vest upon his (the testator's) death rather than at the death of the last life tenant. They argue there is ambiguity in the will as to the time of the vesting of the remainder interests and they urge application of the rule that the law favors vested rather than contingent remainders and if there is doubt whether the testator intended a remainder should vest at his death or at the termination of a life estate, the doubt will be resolved in favor of the earlier vesting, citing cases of which *In re Estate of Works,* 168 Kan. 539, 213 P. 2d 998 may be said to be typical.

The question of ambiguity in the will was raised by the pleadings in the case originally brought by the plaintiffs in *Aten v. Tobias,* supra, in an effort to accelerate the ultimate vesting of the estate, and to an extent was determined throughout that proceeding adversely to the plaintiffs therein who are now the appellants or the successors in interest of those plaintiffs.

This court characterized the action in this language:

"Indeed, in a real sense, the action so far as the real estate was concerned was designed to free all the lands of Cyrus from any and all restrictions

and limited devises and to expend into allodial fee the interests of the two plaintiffs and these four defendants. . . ." (p. 659.)

However, we hesitate to apply the doctrine of *res judicata* to all aspects of the case inasmuch as this court did not delve into the exact nature of the remainder interest. It did rule, and this would become *res judicata,* that a trust estate was created in the first named legatees in paragraph 3 of the will, saying,

". . . in our opinion the testator did create a precedent particular estate, a trust estate for the benefit of the six sons and daughters; with power in the executor to sell part of the trust estate and reinvest the proceeds and hold the same as trustee. The trustee was authorized to sell and 'make good title,' and in the acquisition of substituted property it should be 'taken in the name of my executor, as trustee.' And while the grants to the six beneficiaries are characterized in the will as a life estate in the net rents of the home place, and as a life estate in the other lands, yet elsewhere in the will the beneficiaries are designated as legatees, which more nearly defines their status. They were in effect annuitants, for the will provides:

" 'Out of the rents and issues of said real estate, there shall be first paid annually, by my executor, all taxes, charges and assessments thereon, and the residue of all rents, issues, profits and proceeds thereof shall be divided equally share and share alike, between and among the six legatees above, in this paragraph named.' " (p. 655.)

Preliminary to consideration of the particular nature of the remainder created by the will, we should note certain rules applicable in will construction, the cardinal one being, of course, that the intention of the testator must be ascertained and the will so construed as to carry out that intention. In such construction a court must ascertain the intent of the testator, as revealed by all the language used by the testator, not in isolated words, clauses or paragraphs, but in the entire instrument. All provisions of a will must be considered and construed together (*Giese v. Smith,* 195 Kan. 607, 408 P. 2d 687).

As stated by appellants the first issue is whether the remainder vested in interest at the death of the testator or whether vesting in interest was postponed until the end of the life estates, thus creating a contingent remainder.

Particularly pertinent are the words of survivorship used in the last two subparagraphs of paragraph 3 of the will reading as follows:

"Upon and after the death of all of said six legatees above named all of the said real estate shall be and become the property, in fee simple, of the grand children of myself and wife or either of us, being children of any of the above named six legatees who may leave a child or children surviving.

"Upon the vesting of said real estate, in fee simple, in the grand children

of myself and wife, or either of us all such grand children shall take and receive equally, share and share alike, *per capita* and not *per stirpes.*"

Appellees argue, and the trial court found, that here the testator set up as a prerequisite for the grandchildren to take the remainder, the condition precedent that they survive, and that the words "being children of any of the above named six legatees who may leave a child or children surviving" refer to the grandchildren surviving the life tenants. We think the language of the will and pertinent authority support this view.

In Restatement of Property, Future Interests, Parts 3 & 4, § 251, we find this:

"In a limitation purporting to create a remainder or an executory interest, a description of the intended takers as persons 'who survive,' or who are 'living,' or by other language of the same import, but which fails to designate the time to which such takers must survive, tends to establish the time of the termination of all preceding interests as the time to which survival is required." (p. 1266.)

This rule describes limitations which may be regarded as being ambiguously worded with respect to the duration of the requirement of survival, but as to which there is a constructional preference for finding the duration described therein and which thereby makes applicable the further rule stated in the same work at section 250, as follows:

"In a limitation purporting to create a remainder or an executory interest, a description of the intended takers

"(*a*) as persons

"(*i*) 'who survive' to a future time; or

"(*ii*) who are 'living' at the end of a prior interest or other period of time; or

"(*b*) by language having the same import as one of the expressions described in Clause (*a*)

tends to establish as to the purported interest of each intended taker

"(*c*) that a requirement of survival exists; and

"(*d*) that such survival is a condition precedent of such interest." (p. 1258.)

The same rule is briefly referred to in 33 Am. Jur., Life Estates, Remainders, etc., § 122, thus:

"In the later English cases and in the greater number of American jurisdictions the presumption is that words of survivorship refer to the period of distribution of the estate in remainder unless a special intention to the contrary is expressed by the language of the will. . . . Time and again it has been pointed out that to refer words of survivorship to the termination of the intervening estate is to give the words their natural and ordinary meaning, and that

it would be wholly unnecessary to use the word 'surviving' if the testator intended that all those living at the time of his death should take." (p. 581.)

In *Purl v. Purl*, 108 Kan. 673, 674, 197 Pac. 185, the will gave land to a son "to have during his life, and at his death it goes to his children, if he has any living; if not, it goes to his brothers and *sisters or their heirs*," and this court held a contingent remainder was thereby created, approving the following statement of principle:

" '. . . where a gift to survivors is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only, unless a special contrary intent is found in the will.' " (p. 680.)

In *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146, the court held that under the terms of a will, interests in real estate depending on survival of a trust were contingent. The court commented on the presumption of early vesting as set forth in the case of *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288 (which presumption is urged by appellants as applicable here) as follows:

"The decision was rendered in 1889, when courts and text writers were fond of extolling the intention of the testator as the 'pole star' of all interpretations, and then turning their backs upon it if the testator created a contingent remainder. . . . The true rule is, that in case of unfeigned ambiguity in the langauge used in creating a remainder, a construction is favored that will make the remainder a vested one; but such a construction must give way to the intention of the testator as expressed in the will." (pp. 319, 320.)

For other cases of like import where devises employing similar language were held to create contingent remainders, see *Schwarz v. Rabe*, 129 Kan. 430, 283 Pac. 642; *Berthoud v. McCune*, 130 Kan. 634, 287 Pac. 904; *Walker v. Row*, 132 Kan. 564, 296 Pac. 699; *In re Estate of Asendorf*, 167 Kan. 165, 205 P. 2d 934; *Diver v. Hendrix*, 178 Kan. 253, 284 P. 2d 1080.

Returning to the language employed by the testator in this case, we think it clear from its plain and ordinary meaning he intended that the remainder of his estate was to go, at the time of the death of the last life tenant, to those of his grandchildren who were *then* living or surviving. This conclusion is compelled by several circumstances. The testator used the word "surviving" in several places in his will. He used it in paragraph 2 of his will disposing of the "home place," and he used it twice in paragraph 3 preceding the particular subparagraphs with which we are primarily concerned. In each of these instances he used the word in referring to children of the legatees who might survive the death of such legatees. He used virtually the same context in the subparagraph providing for the remainder, and we think with the same thought in

mind, that is, those surviving at the death of the last legatee. There is nothing remotely indicating that he meant the remainder to go to persons surviving at the time of his own death. If the latter were the case there would have been no need for any mention of survivorship at all as he would have already accomplished that without the additional language. We think the entire will expresses the intent of the testator to keep intact the corpus of his estate for the benefit of his children and stepchild (with a provision for including children of deceased life tenants as life tenants with a trustee empowered to manage) until the death of the last of these, then to be distributed among the surviving grandchildren. He further provided a scheme of equality in that distribution—the final vesting in fee simple—by making a *per capita* and not *per stirpes* distribution among those grandchildren. He did not say he intended anything to go to his grandchildren *and their heirs,* nor did he use any other words of descent as he could so easily have done. This method of final distribution negatives the thought of any provision for those beyond the line of grandchildren, and it evidences as well the testator's intention that it was at the death of the last surviving legatee that the final takers were to be identified. Once the testator's intent becomes clear, the policy or wisdom of his bounty becomes immaterial. In view of the foregoing we think the trial court ruled correctly as to the nature of the remainder created and it is unnecessary to go into other matters urged in support of that ruling.

Turning to the so-called family agreement we should note first it purported to deal only with the life estates in the oil royalty heretofore mentioned and carefully excluded the balance of the Tobias estate by virtue of the following provision:

"It is specifically understood and agreed between the parties hereto that the inclusion of said Estate of Vernon Enders for a distributive share of said royalty is for the purpose of avoiding controversy and delay and shall not be construed as an admission or recognition by the undersigned or either of them that said Estate of Vernon Enders has a vested interest by virtue of said will in the real estate of the Estate of Cyrus Tobias, Deceased."

Thus there was no recognition of the Enders' heirs having any interest in the Tobias estate by reason of the will as now contended. We think this agreement cannot here be given effect as urged because to do so would, as concluded by the trial court, defeat the trust created by the will as determined by *Aten v. Tobias,* supra, to the detriment of possible contingent remaindermen in that it is an attempt to vest an interest in contingent remaindermen who

may die prior to the death of the last surviving life tenant, and it fails to provide for any adopted children who might become remaindermen. In Kansas, the rule is that children adopted after a testator's death are to be included within a class of "children" of a designated person (*Meek v. Ames*, 177 Kan. 565, 280 P. 2d 957). We agree with the trial court's conclusion that the agreement cannot be held to accelerate the vesting of the remainder interests, which in effect, was the same result sought by the same plaintiffs and their predecessors in interest in *Aten v. Tobias*, supra. Nothing herein is to be construed as preventing any disposition of the income from the invested royalty proceeds as the parties agree.

Nor do we think the oil and gas lease is subject to cancellation because of any lack of authority in the trustee in its execution. The fifth paragraph of the will expressly provided that the executor could sell the real estate and reinvest the proceeds and hold the same as trustee for the benefit of the life tenants. As a result the trustee had the implied right to lease the same for oil and gas purposes. A trustee must do all that is possible to prevent waste, and if real property constituting a part of the trust estate is in danger of drainage or other waste, which would be precluded by development for oil and gas, such a trustee impliedly has the power to lease for oil and gas to prevent such drainage and waste (*Heffelfinger v. Scott*, 142 Kan. 395, 47 P. 2d 66). Nor is there any deprivation to the remaindermen in this case in the development of the oil and gas lease where the royalties are held by the trustee and used as is being done herein.

We have considered the other contentions raised by appellants but we find nothing to warrant disturbing any of the trial court's orders and rulings, and they are affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.