No. 44,926

Myrtle Campbell, *Appellee*, v. Harriett McBurney; Nina Carr, formerly Nina Buckmaster; Robert W. Campbell; George T. Campbell; Connie Lambertus; Richard D. Campbell; and Terrence D. Campbell, *Appellants*, and Clint O. English, *Appellee.*

(439 P. 2d 133)

Opinion filed April 6, 1968.

*Paul R. Wunsch*, of Kingman, argued the cause, and *Robert S. Wunsch* and *David D. Gaumer*, of Kingman, were with him on the brief for the appellants.

*Rae E. Batt*, of Kinsley, argued the cause, and was on the brief for the appellee, Myrtle Campbell.

*Evart Garvin*, of St. John, was on the brief for the appellee, Clint O. English.

The opinion of the court was delivered by

O'Connor, J.: This is a partition action involving 320 acres located in Edwards county. From a judgment of the district court

determining that the appellee, Myrtle Campbell, is the owner of an undivided one-half interest in the real estate under the terms of the will of T. M. Campbell, the appellants have appealed.

T. M. Campbell, who owned the land, died testate March 3, 1932. His will and codicil were duly admitted to probate and his estate fully administered. By the terms of the codicil, dated May 5, 1925, he devised a life estate in the land to his grandson Phillip T. Campbell and Phillip's mother, Ida May Campbell, subject to certain conditions which it is agreed were complied with to maintain their respective life interests until the death of the survivor. The remainder interest was devised as follows:

"Upon the death of said Phillip T. Campbell and Ida May Campbell, or upon the death of Phillip T. Campbell and the remarriage of Ida May Campbell, or upon the termination of their life estate upon any of the contingencies hereinbefore named, then I will, devise and bequeath said real estate to my son, Ralph W. Campbell, if he shall be living, and if he be not living then I will, devise and bequeath the said real estate to the *legal heirs of my son, Ralph W. Campbell.*" (Emphasis added.)

The life tenants, Ida May Campbell, who died November 21, 1954, and Phillip T. Campbell, who died July 1, 1965, were predeceased by Ralph W. Campbell. Ralph died testate on April 25, 1948. He was survived by his second wife, Myrtle (the appellee herein), and five children born of his first marriage: Harriett McBurney, Nina Carr, formerly Nina Buckmaster, Robert W. Campbell, George T. Campbell, and Ralph D. Campbell. Ralph W.'s first wife, Mathilda, had died intestate on February 14, 1943. One son, Ralph D., died intestate December 11, 1961, leaving surviving him three children: Connie Lambertus, Richard D. Campbell, and Terrence D. Campbell.

By the terms of a will and codicil thereto executed by Ralph W. Campbell following his marriage to the appellee, certain bequests and devises were made to her upon condition that she renounce all her rights under an antenuptial agreement the parties had entered into on November 19, 1943, two days prior to their marriage, which agreement provided that should the appellee survive Ralph, she would take a child's share of his estate. The appellee executed a consent to the will, whereby she accepted the provisions for her benefit thereunder, and expressly renounced her rights under the agreement. During the administration of Ralph W. Campbell's estate, the appellee's previous renunciation was reaffirmed, as reflected in the journal entry of final settlement in the probate court.

The land in question was not mentioned in the journal entry, nor was it considered an asset of Ralph W. Campbell's estate.

On January 20, 1966, the appellee instituted this action in partition, claiming she owned a one-half undivided interest in the 320 acres as a "legal heir" of Ralph W. Campbell under the terms of the will of T. M. Campbell, and that the appellants, consisting of the four children of Ralph W. Campbell and three children of the deceased Ralph D. Campbell, owned the remaining one-half undivided interest thereof, all of which was held by them as tenants in common. Clint O. English, the agricultural tenant of the land, was made a party to the action, but he claims no interest in the property.

The appellants deny that the appellee is the owner of any interest in the real estate, or in the alternative, that she owns only a child's share, or a one-sixth undivided interest.

The district court, in its memorandum opinion, made findings essentially in accord with those stated herein, and concluded (1) that under the terms of the will of T. M. Campbell, the heirs of Ralph W. Campbell, to whom the property was devised, were to be determined at the death of the last life tenant; (2) that the parties to the action, except Clint O. English, were the "legal heirs" of Ralph W. Campbell at the date of death of the last life tenant (Phillip T. Campbell) and, as such, were owners as tenants in common of the real estate in the following proportions:

The appellee, Myrtle Campbell, an undivided one-half interest; the appellants, Robert W. Campbell, Harriett McBurney, Nina Carr, formerly Buckmaster, and George T. Campbell, each an undivided one-tenth interest; and the appellants, Connie Lambertus, Richard D. Campbell and Terrance D. Campbell, each an undivided one-thirtieth interest; and

(3) that the antenuptial agreement was of no force or effect in determining appellee's interest in the property. The district court further found the real estate was subject to partition, and rendered judgment accordingly. Thereafter, appellants' motion for new trial was overruled.

Before examining the respective positions of the parties in relation to the points raised on appeal, we are mindful of the cardinal rule in construing a will that the intention of the testator must be ascertained from the language used and the will so construed to carry out that intention. (*Hitchcock v. Skelly Oil Co.*, 197 Kan. 1, 414 P. 2d 67; *Baldwin v. Hambleton*, 196 Kan. 353, 411 P. 2d 626.)

The appellants first contend the trial court erroneously con-

cluded that under the terms of the will the proper date for determining the heirs of Ralph W. Campbell who would take an interest in the real estate was the date of the death of the last life tenant (Phillip T. Campbell). Appellants, relying on *Solomon v. Morse,* 188 Kan. 156, 360 P. 2d 1049, argue that in light of the testator's family situation at the time the will was executed, it would be more in keeping with his intention that he had reference to the "potential" heirs of Ralph W. Campbell living at the time of testator's death, and that under such a construction appellee would be excluded from taking any interest whatsoever in the property. We cannot agree.

The facts in *Solomon* are clearly distinguishable. There, the testatrix died, leaving seven children. She devised the land to one daughter for life, and at the life tenant's death that " 'said property be sold and divided equally share and share alike between *my then surviving heirs, all of whom are hereinafter named.*' " (Emphasis added.) The testatrix named her seven children in later provisions of the will. Four of the children died, each leaving children, prior to the death of the life tenant. In a partition action by the two surviving children of the testatrix against her surviving grandchildren, the plaintiffs claimed all the interest in the land as the only two "surviving heirs" at the death of the life tenant. The decision of the trial court, adopted by this court, in favor of the grandchildren, recited in part as follows:

" '. . . In leaving the property to her "then surviving heirs" she [the testatrix] follows with the language, "all of whom are hereinafter named." It is clear that by the use of those words she did not intend to describe those who in the distant future would constitute the class of "then surviving heirs," but she only intended to describe those who were her living potential heirs at the time of making the will. . . .' " (p. 158.)

In the case at bar the testator used no language indicating an intention to designate the "potential" heirs of Ralph W. Campbell in existence at the time of the making of the will, nor to vest any interest in those persons who might later become such heirs. This is clearly not a devise of a remainder to a class, such as in *Baldwin v. Hambleton, supra, In re Estate of Paulson,* 188 Kan. 467, 363 P. 2d 422, and *In re Estate of Works,* 168 Kan. 539, 213 P. 2d 998, where a member or members of a class in existence at the death of the testator take a vested interest. (Also, see *Epperson v. Bennett,* 161 Kan. 298, 167 P. 2d 606, 166 A. L. R. 816.) In our view, the testator, by the language used, intended to describe those persons

who in the distant future would constitute the "legal heirs" of Ralph W. Campbell. In fact, their identity was not ascertainable until the death of Ralph W. Campbell, for there can be no heir of a living person. In *Solomon*, "my then surviving heirs" referred to the heirs of the testatrix, rather than the heirs of the remainderman, and were ascertainable at the moment of the testatrix's death. (Also, see, *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288.)

In *McCartney v. Robbins*, 114 Kan. 141, 217 Pac. 311, the testator devised land to A for life, with the remainder to the life tenant's heirs. In holding that the wife of the life tenant, living at the time the will became operative, took only a contingent remainder, dependent upon her surviving her husband, Mr. Justice Burch said:

"When the will took effect, Fannie E. McCartney was wife of the life tenant, not heir. Whether she would be her husband's heir, and consequently whether she would take anything under the will, depended on surviving her husband. If she had died before her husband, and he had remarried, the second wife, surviving her husband, would have been his heir, and would have taken under the will. Therefore the remainder was contingent.

. . . . . . . . . .

" 'A very common instance of a remainder contingent because of uncertainty in the remainderman is presented by the limitation of a remainder to the heirs, or to the heirs of the body, of a living person named, in which case the heirs cannot be ascertained till such person's death, on the principle that there can be no heir to a living person, as expressed in the maxim, *Nemo est haeres viventis*. So soon as the person named dies, his heirs are ascertainable, and, provided there is no further condition precedent, the remainder immediately vests.' (1 Tiffany on Real Property, 2d ed., pp. 486, 488.)" (p. 142.)

The appellants' argument that it was not the testator's intention for a second wife of Ralph to take any interest in the property cannot be sustained. It is perfectly obvious that T. M. Campbell fully expected his son to have heirs, yet he made no attempt to exclude a surviving spouse, whether she be Ralph's first or second wife. Furthermore, the language of the will reveals no intention that the property remain in the bloodline of the testator. Had he so desired, he could easily have used language that would have brought about such a result.

Whether the trial court was correct in determining the heirs of Ralph W. Campbell were to be ascertained at the death of the last life tenant (Phillip T. Campbell) rather than at the time of Ralph's death is not important. Under the facts here the result is the same. Whatever remainder interest Ralph W. Campbell acquired under the terms of the will terminated at his death. Surviving Ralph as

his heirs were his widow (the appellee) and five children. (*Jackson v. Lee*, 193 Kan. 40, 392 P. 2d 92.) Regardless of whether the remainder vested in the heirs existing at the time of Ralph's death or at the death of the last life tenant, the three children of Ralph D. Campbell, who predeceased the last life tenant, take their father's share, and no contention is made to the contrary.

It follows that the trial court properly determined that the parties in this case, other than Clint O. English, constituted the "legal heirs" of Ralph W. Campbell under the will of T. M. Campbell and, as such, were the owners as tenants in common of the real estate subject to partition.

As an heir of Ralph W. Campbell, what is the appellee's proportionate interest in the land in question? Appellants, while frankly conceding the import of our decision in *Jackson v. Lee*, supra, is against them, contend that at most appellee is entitled to a one-sixth undivided interest. The same identical arguments made and rejected in *Jackson* are again advanced, with the vigorous suggestion that the case be overruled for the reasons stated in the dissenting opinion of Mr. Justice Fatzer. We have again examined the case and adhere to what was said in the majority opinion. There, the testator devised real estate to a son for life, and upon the son's death "to his heirs in fee simple." The son's wife claimed a one-half interest in the land. This court held that heirs are to be determined in accordance with the provisions of the statutes of intestate succession which make the wife of the son one of his heirs, and the heirs so determined take such portions of the real estate as the statutes designate, and not *per capita*. While space does not permit extensive quoting from the opinion, at page 46 it is stated:

". . . the general rule appears to be that a devise or bequest to 'heirs,' whether it be the testator's heirs or the heirs of a third person, designates not only who are to take, but also the portions in which they are to take. The law will presume an intention that the heirs take according to the law of descent and distribution unless there is language in the will indicating a contrary intention."

Here, the testator used the phrase "legal heirs," which is an even stronger indication that the intended devisees be those persons who were entitled to take under the statutes of descent and distribution in the portions designated by such statutes. The words "heirs" or "legal heirs" have a peculiar and appropriate meaning in law, and it must be presumed, in the absence of a clearly indicated contrary

intent in the will, that the testator used them in their ordinary legal sense. There is a complete absence of language to indicate that the testator intended the heirs take *per capita*, rather than *per stirpes* according to the law of descent and distribution. Therefore, under the rule of *Jackson*, the appellee took an undivided one-half interest in the real estate as the surviving spouse of Ralph W. Campbell. (K. S. A. 59-504.)

Finally, the appellants contend that even if the rule of *Jackson v. Lee*, supra, remains controlling as the law of this state, that because of the antenuptial agreement whereby the appellee agreed to take a child's share in Ralph's estate, it would be inequitable, and she should be estopped from claiming a greater interest than she would have acquired under the agreement. The simple answer to appellants' argument is that the antenuptial agreement was effectively revoked and canceled by the mutual consent of the parties. Ralph W. Campbell in his will made certain bequests and devises to the appellee upon condition that the appellee renounce all her rights under the antenuptial agreement, and in lieu thereof accept the provisions for her benefit under the will. In her consent to the will she expressly renounced her rights under the agreement, and the renunciation was later reaffirmed during the administration of Ralph W. Campbell's estate. There is no question that an antenuptial agreement made by parties contemplating marriage may be revoked and canceled by their mutual consent after the marriage, and when that is done, the agreement is no longer effective so as to change or modify a party's rights under the laws of intestate succession. (See, *In re Estate of Benso*, 165 Kan. 709, 199 P. 2d 523, and cases cited therein; 26 Am. Jur., Husband and Wife § 302; 41 C. J. S., Husband and Wife § 109.) The trial court properly found the antenuptial agreement was of no force or effect in determining appellee's interest in the real estate.

Other contentions of the appellants have been examined and are found to be without merit.

The judgment of the district court is affirmed.

FATZER, J., concurring: I continue to believe that the eariler case of *Jackson v. Lee*, 193 Kan. 40, 392 P. 2d 92, was wrongly decided (see my dissenting opinion pp. 49-51), however, under the compulsion of the *Jackson* case, I join the court's opinion and judgment in this case.